[No. H020538. Sixth Dist. Nov. 9, 2000.]

CALIFORNIA HIGHWAY PATROL, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY, Respondent;
LUIS LUNA, Real Party in Interest.

**COUNSEL**

Bill Lockyer, Attorney General, Martin H. Milas, Assistant Attorney General, Damon M. Connolly and Mark D. Johnson, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Biggam, Christensen & Minsloff and Benjamin R. Vance for Real Party in Interest.

**OPINION**

**WUNDERLICH, J.—**

### I. INTRODUCTION

In this criminal action, the California Highway Patrol (CHP) petitions for a writ of mandate directing respondent court to vacate its order granting the *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]) filed by real party in interest Luis Luna (defendant) and compelling production of certain documents from two CHP officers' personnel records. The documents pertain to an investigation of one officer's "time card issue" and another investigation regarding "a problem"

with a police report written by a second officer. Both officers were involved in defendant's arrest. The trial court agreed with defendant that these documents were discoverable pursuant to the California Supreme Court's ruling in *People v. Wheeler* (1992) 4 Cal.4th 284, 295 [14 Cal.Rptr.2d 418, 841 P.2d 938] (hereafter *Wheeler*), that nonfelony conduct involving moral turpitude is admissible to impeach a criminal witness.

Petitioner CHP argues that the trial court abused its discretion by ordering production of these documents because defendant's *Pitchess* motion did not meet the good cause standard applied by this court in *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135 [79 Cal.Rptr.2d 624] (hereafter *City of San Jose*), for discovery of police personnel records. We agree. The decision in *Wheeler* does not relieve a defendant of the burden of making a showing of good cause as required by the statutory scheme for discovery of documents from a peace officer's personnel record. (Evid. Code, §§ 1043, 1045.) As defendant did not make the requisite showing of good cause with respect to the documents in question, we will issue a peremptory writ of mandate as requested by petitioner.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Defendant's Arrest and Related Police Reports*

This matter arises from defendant's arrest on January 31, 1999. Five CHP officers were involved in the arrest, including Officer Pinedo, Officer McCain, Officer Conley, Officer Karsgor, and Officer Legarra. Officer McCain wrote two police reports. One report is entitled "Driving Under the Influence Arrest—Investigation Report," and is dated January 31, 1999, (hereafter DUI Report). The second report is dated February 10, 1999, and is entitled, "Traffic Collision Report" (hereafter Traffic Report).

Officer McCain's DUI Report provides the officer's account of the events surrounding defendant's arrest. Officer McCain was dispatched to a collision scene in the early morning hours of January 31, 1999. On arrival at the scene on State Route 1, he observed a white BMW with no occupants parked on the shoulder. Officer McCain examined the BMW and observed star cracks on the windshield and blood on the windshield and steering wheel. After completing his examination, Officer McCain was advised by his partner, Officer Pinedo, that he had heard on the police scanner that an ambulance was en route to a nearby gas station.

Officers McCain and Pinedo then went to the gas station, where they found three CHP officers already present and conducting an investigation

regarding the white BMW. The three officers were Officer Conley, Officer Karsgor, and Officer Legarra. While patrolling State Route 1, they noticed the BMW on the shoulder and began their investigation at the gas station in an attempt to locate any persons involved with the vehicle. Officer Karsgor told Officer McCain that on arrival at the gas station she had observed two individuals who appeared to be involved with the BMW collision because their clothes were dirty and bloody. Officer Karsgor confirmed that one individual, defendant Luna, was the driver of the BMW and the other individual, Ruben Valdez (Valdez), was a passenger.

Office McCain then interviewed both defendant and Valdez. Valdez stated that defendant had lost control of the BMW, causing the vehicle to crash into a road sign and travel into the ice plant at the shoulder of the road. Defendant explained that he lost control because the road was wet. However, during the interview Officer McCain smelled a strong odor of an alcoholic beverage on defendant's breath and observed objective signs of alcohol intoxication. Defendant also stated that he had been drinking. Officer McCain administered field sobriety tests which defendant was unable to complete and placed him under arrest for driving under the influence in violation of Vehicle Code section 23153, subdivision (a).

Officer McCain's DUI Report provides further details of the difficult circumstances of defendant's arrest, as follows: "I placed [defendant] in the right rear seat of my patrol vehicle and waited until the tow truck arrived at out [*sic*] location. While waiting, [defendant's] chin began to bleed down onto his chest. Officer Pinedo grabbed some medical bandages and was attempting to clean up [defendant's] bleeding. As Officer Pinedo opened the right rear passenger's door, [defendant] began yelling profanities at him. Officer Pinedo began to explain that he was going to clean him up when all of a sudden, [defendant] began spitting blood and saliva into Officer Pinedo's face and eyes. [¶] Officer Pinedo stepped back and I closed the door to prevent [defendant] from spitting on both of us. Officer Pinedo walked around to the left side of the patrol vehicle and opened the rear door to assist [defendant] out of the vehicle in order to properly restrain him, due to his violent behavior. [Defendant] began kicking and yelling threats to Officer Pinedo and myself. At one point, Officer Pinedo's right hand was kicked and pressed for several seconds into the rear pillar post of the patrol vehicle. [Defendant] continued kicking, breaking the left rear door panel. Officers Conley, Karsgor, [and] Legarra, assisted Officer Pinedo and myself with the removal of [defendant] from my patrol vehicle. [Defendant] continued thrashing about, preventing us from properly restraining him with leg restraints. After a moment of intense struggle, [defendant] was properly restrained and positioned on his right side in the back of my patrol vehicle."

Defendant was then transported to a hospital for medical clearance and a chemical test. Later, he was booked on charges of felony driving under the influence (Veh. Code, § 23153, subd. (a)), felony battery of an officer (Pen. Code, § 243, subd. (c)), resisting arrest (Pen. Code, § 69), and no proof of insurance (Veh. Code, § 16029, subd. (c)(1)). We note that the record lacks a copy of the complaint, information or any other documentation of the charges actually filed by the People, with the exception of a caption to a reporter's transcript indicating that the charges include driving under the influence (Veh. Code, § 23153, subd. (a)); causing bodily injury to another person while driving under the influence (Veh. Code, § 23153, subd. (b)); battery against the person of a police officer (Pen. Code, § 243, subd. (b)); and vandalism (Pen. Code, § 594, subd. (a)).

Officer McCain's Traffic Report includes a virtually identical account of the circumstances of defendant's arrest. Additionally, the Traffic Report includes a summary of Officer Conley's involvement in the investigation. Officer Conley identified defendant as the driver of the white BMW, interviewed him and reported to Officer McCain that defendant had told her he had been drinking.

B.    *First Pitchess Motion*

During the course of the prosecution, defendant filed two *Pitchess* motions. The first motion was heard in July 1999. That motion sought an order compelling the CHP to produce records from the personnel files of all five officers involved in defendant's arrest. The records sought included (1) complaints of misconduct, including "acts of force, violence, threats, lying, and preparing false police reports"; (2) the names, addresses and phone numbers of complainants; (3) records of disciplinary action taken in relation to treatment of persons in custody; (4) copies of all investigative reports by the "Investigating Department"; (5) reports by psychiatrists, psychologists, and other officers pertaining to misconduct; and (6) all reports of disciplinary actions relating to misconduct.

In support of the motion, defense counsel submitted a declaration stating that the credibility of all five CHP officers would be a material issue at trial. Additionally, defense counsel stated on information and belief that the arresting officers had used excessive force in arresting defendant. Specifically, defense counsel averred that Officer Pinedo "and/or some other officer of the California Highway Patrol struck or slapped at [defendant] as he sat, restrained, in the back of the patrol car. [¶] [Defendant] responded by spitting and yelling. [Defendant] was removed from the car, forced to the

ground, and battered by between three and five officers. [¶] An independent witness, whose statement has been disclosed to the prosecution, has verified this account."

Based on this scenario, defense counsel asserted that "[w]ithout access to said complaints and follow-up documents relating to the use of excessive force by said arresting officers, the defendant will be denied due process of law." Further, defense counsel's declaration stated "[t]he material sought may also contain complaints of actions that demonstrate moral turpitude under *People v. Wheeler*[, *supra*,] 4 Cal.4th 284, and is thus discoverable for impeachment purposes." Defendant's *Pitchess* motion was also supported by a memorandum of points and authorities and copies of Officer McCain's DUI Report and Traffic Report.

The CHP did not file written opposition to the *Pitchess* motion, but the record reflects that a CHP officer appeared in court with documentation of the officers' personnel records. The court performed an in camera review and made the following findings: (1) no records were discoverable other than certain records found in the personnel files of Officer McCain and Officer Conley; (2) with respect to Officer Conley, "[t]here was a report of a problem . . . in a police report that she filed and that report was investigated and a memo written by Sergeant Kerr . . . [a]nd that is discoverable"; and (3) with respect to Officer McCain, "there was an issue of documentation of a time card and that is discoverable." However, the trial court did not expressly order disclosure of any particular records and no records were disclosed by the CHP at that time. Defense counsel stated on the record that he would obtain further information by investigation: "So we will go to Sergeant Kerr to request that report. . . . And with regards to the time card issue I should just have—I'll just have an investigator interview Officer McCain about that." Thus, defense counsel did not request the trial court to order production of the documents from the CHP at the time of the hearing on defendant's first *Pitchess* motion.

## C. Second Pitchess Motion

In September 1999, a hearing was held on defendant's second *Pitchess* motion. Defendant advised the court that the efforts of his investigator to obtain personnel records pertaining to Officer McCain's time card issue and Officer Conley's problem police report had been unsuccessful. Accordingly, the second *Pitchess* motion sought an order compelling the CHP to produce (1) "With regards to Officer McCain, any and all documents, records, written reprimands, or other documentation concerning any irregularities

with Officer McCain's time cards in the last five years"; and (2) "With regards to Officer Conley, any and all documents, records, reports, written reprimands, or any other documentation concerning any allegations, whether or not investigated or verified, that one or more of Officer Conley's . . . written reports were in any way misleading, fabricated, untruthful, biased, or inaccurate." The second *Pitchess* motion also sought disclosure of any records of disciplinary action taken against Officers McCain and Conley. However, the second motion did not include an additional or supplemental declaration by defense counsel. Instead, the motion relied upon the attorney declaration filed with the first *Pitchess* motion.

CHP filed written opposition to the second *Pitchess* motion, on grounds that defendant had not made the showing of good cause required for the disclosure of peace officer personnel records, as set forth in Evidence Code sections 1043 and 1045 and as applied by this court in *City of San Jose*. Specifically, CHP argued that defendant's showing was insufficient to establish good cause for the disclosure of the personnel records pertaining to Officer McCain and Officer Conley because the second motion was not supported by an adequate declaration by defense counsel. CHP contended that the attorney declaration filed in support of the first *Pitchess* motion was limited to an allegation of officer misconduct consisting of the use of excessive force, which was irrelevant to the officer misconduct (time card issue, false police report) alleged in the second *Pitchess* motion. Therefore, CHP argued, defendant had failed to demonstrate good cause for the discovery since the second *Pitchess* motion did not set forth a specific factual scenario to establish a plausible factual foundation that police misconduct other than excessive force was material to defendant's case.

CHP also argued that the second *Pitchess* motion was defective because defendant had failed to show that the records sought were not available from another source. Finally, CHP challenged defendant's attempt to obtain police personnel records on the basis of *Wheeler, supra,* 4 Cal.4th 284. CHP asserted that a *Wheeler* motion was improper because disclosure of police personnel records is governed by the motion procedure set forth in the Evidence Code and because irregularities in time cards or police reports do not constitute misconduct rising to the level of moral turpitude.

D. *The Trial Court's Ruling*

At the hearing on the second *Pitchess* motion, defense counsel expanded on defendant's grounds for disclosure of the police personnel records in question. Defense counsel argued that all evidence of prior dishonesty by the

CHP officers was material to defendant's case, because "In [my] affidavit it alleges that excessive force was used but there are a number of police officer witnesses who I suspect will all agree that excessive force was not used and part of the defense indeed will be that these police officers are protecting each other. That's . . . why evidence of prior dishonesty is so probative in this case."

The court agreed with defense counsel, and ordered disclosure of (1) the investigative report pertaining to the problem police report by Officer Conley, and (2) the investigative report pertaining to Officer McCain's time card documentation issue. In so ruling, the court recalled that its in camera review had been performed for the purpose of determining whether any personnel records existed which reflected the use of excessive force or "any *Wheeler* issues." The results of the in camera review were, the court noted, that "[t]here was no information and no indication of anything dealing with excessive force," but that "potential *Wheeler*" issues were revealed as to Officer McCain and Officer Conley. The court also remarked, "I'm not saying that [these records] will be admissible but at least they are discoverable and at this point under my view of *Wheeler* I'll order those at this point [*sic*]."

At CHP's request, the trial court also issued an order staying the court's discovery order while appellate review was pending. CHP then filed a petition in this court, seeking a writ of mandate directing the court to vacate its discovery order. We issued an alternative writ and order to show cause why the relief requested should not be granted, and also an order staying the trial court's discovery order pending our further review. Further, we directed petitioner CHP to file under seal in this court copies of all CHP records provided to the trial court for its in camera review.

### III. DISCUSSION

#### A. *Writ Relief Is Appropriate*

■    Writ review is appropriate when the petitioner seeks relief from a discovery order which may undermine a privilege or a right of privacy, because appellate remedies are not adequate to remedy the erroneous disclosure of information. *(People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403, 413 [92 Cal.Rptr.2d 829].) Additionally, writ review of

discovery orders is appropriate to establish general guidelines for the lower courts. (*Ibid.*)[1]

In performing writ review of discovery orders, we apply the abuse of discretion standard of review, keeping in mind that "[t]rial courts are granted wide discretion when ruling on motions to discover police officer personnel records." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827 [64 Cal.Rptr.2d 400, 938 P.2d 2].) As explained below, we find that the trial court abused its discretion in ordering CHP to produce the documents in question, because defendant did not satisfy the statutory requirements for discovery of peace officer personnel records.

## B. *Discovery of Peace Officer Personnel Records*

A criminal defendant has a limited right to discovery of peace officer personnel records. The guidelines and motion procedure for such discovery were first established by the California Supreme Court in *Pitchess v. Superior Court, supra,* 11 Cal.3d 531. "In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' . . . through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222], citations omitted.) The Penal Code provisions designate peace officer personnel records as confidential, while the Evidence Code sections provide the specific procedures which must be followed to obtain discovery of peace officer personnel records. (*Id.* at pp. 81-82.) "In enacting [Evidence Code] sections 1043 and 1045 the Legislature clearly intended to place specific limitations and procedural safeguards on the disclosure of peace officer personnel files which had not previously been found in judicial decisions." (*Id.* at pp. 93-94.)

Together, sections 1043 and 1045 of the Evidence Code establish a two-step procedure for discovery of peace officer personnel records by a criminal defendant. First, section 1043 requires the defendant to file a written motion for discovery of peace officer personnel records. The motion must include "[a] description of the type of records or information sought," supported by "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such

---

[1]Defendant, the real party in interest, filed a letter with this court advising that CHP's writ petition should have been filed in the appellate division of respondent court because the charge is a misdemeanor. However, defendant did not brief the issue in his opposition and we see nothing in the record to prevent this court from exercising its original jurisdiction in this matter pursuant to California Constitution, article VI, section 10.

governmental agency identified has the records or information from the records." (Evid. Code, § 1043, subd. (b)(2), (3); *City of San Jose, supra,* 67 Cal.App.4th at p. 1143.) Notice must be given to the governmental agency, which in turn must give notice to the person whose records are sought. (Evid. Code, § 1043, subd. (a).)

The second step is reached after defendant makes a showing of good cause for the discovery. (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 83.) "Evidence Code section 1045 specifies that once the moving party has made a showing of good cause for disclosure of peace officer personnel records, the trial court proceeds to an in chambers examination of the records to determine whether they have any relevance to the issues presented in the current proceedings." (*City of San Jose, supra,* 67 Cal.App.4th at p. 1143, fn. omitted.) Thus, the trial court's decision to release information requires a finding of relevance. (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 80, fn. 2.)

■ The California Supreme Court has clarified the meaning of the "good cause" requirement in Evidence Code sections 1043 and 1045. A showing of "good cause" requires defendant to demonstrate the relevance of the requested information by providing a "specific factual scenario" which establishes a "plausible factual foundation" for the allegations of officer misconduct committed in connection with defendant. (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at pp. 85-86; see also *City of San Jose, supra,* 67 Cal.App.4th at pp. 1146-1147.) Thus, in *City of Santa Cruz v. Municipal Court,* the Supreme Court held that the defendant had made the requisite showing of good cause by averring a specific factual scenario (excessive force was used in the defendant's arrest) supported by a plausible factual foundation (the police reports made clear considerable force was used). Since the defendant's motion satisfied the good cause requirement, the court concluded that prior complaints of excessive force or violence involving the two arresting officers were discoverable under Evidence Code section 1043. (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 93.)

In contrast, this court in *City of San Jose* found that the defendant had failed to make the requisite good cause showing. The defendant merely made conclusory statements asserting officer misconduct (" 'voluntary consent to enter was not in fact obtained by the officers' ") without providing a specific factual scenario for the alleged misconduct ("the specifics of the allegedly improper police conduct"). (*City of San Jose, supra,* 67 Cal.App.4th at pp. 1139, 1149.) We concluded that absent a specific factual

scenario, "the trial court could not determine whether 'the discovery or disclosure sought' was material to 'the subject matter involved in the pending litigation.' " (*Id.* at p. 1149.)

Further, our Supreme Court has indicated that a showing of good cause must be based on a discovery request which is tailored to the specific officer misconduct that is alleged. Thus, "when a defendant asserts that his confession was coerced, a discovery request that seeks all excessive force complaints against the arresting officer is overly broad . . . [instead] 'only complaints by persons who alleged coercive techniques in questioning [are] relevant.' " (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [56 Cal.Rptr.2d 49, 920 P.2d 1254], citation omitted, quoting *People v. Memro* (1985) 38 Cal.3d 658, 685 [214 Cal.Rptr. 832, 700 P.2d 446].) The trial court will properly deny such an overbroad discovery request. (*People v. Jackson, supra,* 13 Cal.4th at p. 1220.)

In other words, only documentation of past officer misconduct which is *similar* to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery. (See *People v. Gill* (1997) 60 Cal.App.4th 743, 749 [70 Cal.Rptr.2d 369]; *People v. Hustead* (1999) 74 Cal.App.4th 410, 417 [87 Cal.Rptr.2d 875].) This is because "evidence of habit or custom [is] admissible to show that a person acted in conformity with that habit or custom on a given occasion." (*People v. Memro, supra,* 38 Cal.3d at p. 681.) Similarly, "evidence of reputation, opinion, and specific instances of conduct is admissible to show, inter alia, motive, intent, or plan." (*Ibid.*) Thus, in *People v. Memro,* the court concluded that, "evidence that the interrogating officers had a custom or habit of obtaining confessions by violence, force, threat, or unlawful aggressive behavior would have been admissible on the issue of whether the confession had been coerced." (*Ibid.*)

Applying a similar analysis in *People v. Hustead,* the appellate court concluded that the defendant was entitled to discover prior complaints of false police reports. The court explained that "the police report indicated that [defendant] drove in a dangerous manner; however, [defendant's] counsel's declaration asserted that defendant did not drive in the manner suggested in the report, which led to a reasonable inference that the officer may not have been truthful. Therefore, it becomes relevant whether the officers have been accused of falsifying reports in the past." (*People v. Hustead, supra,* 74 Cal.App.4th at p. 418.)

Accordingly, in the present case the question is whether the two *Pitchess* motions filed by defendant satisfy the statutory good cause requirement for discovery of peace officer personnel records as clarified by our

Supreme Court. As discussed below, we find that good cause was not shown for discovery of the particular peace officer personnel records which the trial court ordered CHP to disclose.

### C. Defendant Did Not Meet the Good Cause Requirement for Discovery

At the outset, we address defendant's contention that CHP has waived any objections to the trial court's discovery order by failing to oppose the first *Pitchess* motion. As the trial court did not actually order CHP to produce any peace officer personnel records at the time of the hearing on the motion and defense counsel did not request such an order (instead indicating that the information would be sought through defense investigation) we conclude that CHP could not have waived any objections.

Our analysis begins with consideration of whether defendant's motions demonstrated good cause for the discovery by providing a specific factual scenario which established a plausible factual foundation for defendant's allegations of police misconduct. First, defendant sought discovery of complaints of excessive force. His initial *Pitchess* motion provided a specific factual scenario (the CHP officers used excessive force in arresting defendant) established by a plausible factual foundation (an independent witness to the arrest would testify that the officers had used excessive force). Thus, with regard to complaints of excessive force, defendant met the Evidence Code section 1043 good cause standard and the trial court was authorized to conduct an in camera review of the officers' personnel records with respect to such complaints.

When the trial court performed its review, however, it found no complaints of excessive force and ordered none to be produced to defendant. Instead, the court ruled that it had found two discoverable "issues" pertaining to a problem police report by Officer Conley and a time card documentation issue on the part of Officer McCain. Neither of these issues had any connection to allegations of excessive force. Thus, the question is whether defendant's *Pitchess* motions also established good cause for discovery of personnel records pertaining to misconduct of a type other than excessive force.

We find that defendant's initial *Pitchess* motion established good cause for discovery of complaints that Officer McCain had previously falsified police reports. The motion included Officer McCain's DUI Report and Traffic Report, which indicated that defendant was violent and resisted arrest. These reports must be viewed in conjunction with counsel's declaration, which avers that an independent witness will testify that defendant did not act

violently until officers used excessive force. Thus, the motion provided a specific factual scenario (Officer McCain's report of the circumstances of the arrest was false) established by a plausible factual foundation (a witness will testify to different circumstances). Had it found information pertaining to falsification of police reports by Officer McCain in its in camera review, the trial court could have properly ordered disclosure of that information within the limitations imposed by the Evidence Code.[2]

However, the trial court did not do so. Instead, it ordered CHP to produce the investigation pertaining to a problem police report prepared by *Officer Conley,* not Officer McCain. This order constitutes an abuse of discretion because defendant's motion did not demonstrate good cause for discovery of complaints or other documentation of problem police reports filed by Officer Conley. Defendant has not claimed that Officer Conley prepared a false police report concerning his arrest, nor did his motions set forth a specific factual scenario to support an allegation of any kind of misconduct on Officer Conley's part other than excessive force.

Similarly, defendant's motion failed to show good cause for discovery of the investigation of Officer McCain's time card documentation issue. As we have discussed, defendant showed good cause for discovery of complaints of false police reports filed by Officer McCain. However, that showing is not good cause for defendant's request for records reflecting time card irregularities, because there is insufficient similarity between an allegation of officer misconduct consisting of filing a false police report and prior officer misconduct consisting of time card irregularities. In short, defendant's request is overbroad because evidence of time card irregularities would not establish a habit or custom or reputation for making false police reports. (See *People v. Memro, supra,* 38 Cal.3d at p. 685.)

Defendant contends that these records are discoverable because they are relevant to the issue of the credibility of Officers McCain and Conley and constitute admissible evidence of nonfelony acts of moral turpitude under *Wheeler.* Essentially, defendant's argument is that good cause for discovery has been shown because (1) it is common knowledge that officers will lie to protect each other; (2) therefore, an officer's credibility is always at issue;

---

[2]We note that Evidence Code section 1045, subdivision (b), excludes from disclosure "(1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery of disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit."

and (3) any records reflecting dishonesty on the officer's part are material to the defense and thus discoverable under Evidence Code section 1043 for use as impeachment evidence pursuant to *Wheeler*. We reject this argument, for several reasons.

In *Wheeler*, our Supreme Court held that "nonfelony conduct involving moral turpitude should be admissible to impeach a criminal witness." (*Wheeler, supra,* 4 Cal.4th at p. 295.) The Supreme Court did not address any issues relating to discovery of peace officer personnel records, and there is nothing in the decision to suggest that a defendant is entitled by virtue of the court's ruling to obtain any police personnel records reflecting moral turpitude without first making the good cause showing required by Evidence Code section 1043. Decisions following *Wheeler* address the propriety of obtaining discovery of *nonpeace officer* witnesses' misdemeanor convictions involving moral turpitude. (See, e.g., *People v. Santos* (1994) 30 Cal.App.4th 169, 177-178 [35 Cal.Rptr.2d 719].)

Our Legislature has expressly provided protection to peace officer personnel records by establishing a statutory scheme prohibiting discovery except upon a written motion establishing good cause for the discovery and in camera review for relevance. The Legislature's intent "manifestly was to protect such records against 'fishing expeditions' conducted by defense attorneys following the *Pitchess* decision." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 54 [19 Cal.Rptr.2d 73, 850 P.2d 621].) Moreover, our Supreme Court has approved the statutory scheme because it "strikes a fair and workable balance between the need of criminal defendants for 'all relevant and reasonably accessible information' . . . and the legitimate concerns of peace officers to shield from disclosure confidential information not essential to an effective defense or otherwise obtainable from other nonprivileged sources." (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 94, citation and fn. omitted.)

To grant discovery of peace officer personnel records on the basis that *Wheeler* permits discovery of all personnel records reflecting officer misconduct involving moral turpitude, without requiring defendant to comply with the good cause requirement of Evidence Code section 1043, would have the effect of destroying the statutory scheme. Defendants could assert merely that police officers are known to lie, and thereby obtain discovery of all information contained in an officer's personnel records which potentially reflects on the officer's credibility. This procedure would effectively abrogate the good cause requirement set forth in the Evidence Code and approved and applied by our Supreme Court, by permitting fishing expeditions into the arresting officers' personnel records in virtually every criminal case.

The present case demonstrates this negative effect. The trial court agreed with defendant that CHP could be compelled to produce officer personnel records reflecting dishonesty, merely upon an unsupported allegation by defendant that officer credibility is relevant because all officers are dishonest and are likely to lie about their fellow officers' use of excessive force. No showing of good cause in compliance with Evidence Code section 1043 was required by the trial court. Therefore, the trial court abused its discretion when it ordered CHP to produce records from the personnel files of Officer McCain and Officer Conley.

Finally, as we reach our conclusion for the reasons stated above, we need not address CHP's contention that the trial court erred because the information sought by defendant is available from other sources.

## IV.   DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order of September 9, 1999, granting real party in interest's motion for disclosure of certain documents from the peace officer personnel files of Officer McCain and Officer Conley, and to enter a new and different order denying the motion. Each party to bear its own costs in this original proceeding.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied February 28, 2001.