132 Cal.Rptr.2d 810 (2003)
107 Cal.App.4th 1271
Donald Paul WARRICK, Petitioner,
v.
The SUPERIOR COURT of Los Angeles County, Respondent;
City of Los Angeles Police Department, et al., Real Parties in Interest.
No. B160462.
Court of Appeal, Second District, Division Two.
March 27, 2003.
Review Granted June 25, 2003.
*811 Michael P. Judge, Public Defender, Albert J. Menaster, Leslie Ringold and Mark G. Havis, Deputy Public Defenders, for Petitioner.
No appearance for Respondent.
Rockard J. Delgadillo, City Attorney, Cheryl J. Ward, Kim Rogers Westhoff, Martin R. Boags, and Michelle S. Wright, Deputy City Attorneys, for Real Parties in Interest.
NOTT, Acting P.J.
Petitioner Donald Paul Warrick challenges the denial of his motion to discover confidential information from police personnel files regarding three officers involved in his arrest for possession of cocaine for sale. The trial court found that Warrick failed to make a showing of "good cause for the discovery ... sought" (Evid. Code, § 1043, subd. (b)(3)) because he had not provided a "specific factual scenario" establishing a "plausible factual foundation" for his allegations of police misconduct. (City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 85-86, 260 Cal. Rptr. 520, 776 P.2d 222 (City of Santa Cruz).) We conclude that the trial court did not abuse its discretion. Accordingly, we deny the petition.

*812 SUMMARY OF FACTS AND PROCEDURE
On April 23, 2002, Warrick, who was on probation for a burglary conviction, was arrested for possession for sale of rock cocaine. The report of the arrest, authored by Los Angeles Police Department (LAPD) Officer Quezada, states the following: On April 23, 2002, at approximately 6:00 p.m., Quezada and two other officers, Lopez and Ramirez, were in uniform in a marked car, patrolling an area plagued with violent crimes and blatant use and sale of narcotics. The officers saw Warrick standing against a wall, looking at a clear plastic baggie that he held in his left hand. The baggie contained an off-white substance that resembled cocaine. As the officers got out of the police car, Warrick looked in their direction and began running on the sidewalk. The officers pursued him; Lopez and Ramirez on the sidewalk, Quezada on the street. As Warrick attempted to run across the street in Quezada's direction, the officers saw Warrick discard numerous rocks that were later determined to be cocaine. Warrick then stopped running, and Lopez and Ramirez took him into custody. Quezada recovered 42 rocks of cocaine from the ground where Warrick had discarded them. Ramirez recovered the clear plastic baggie from Warrick's left hand. The officers arrested Warrick for possession of cocaine for sale.
When arrested, Warrick had on his person $2.75 and porcelain chips (reportedly a common tool used to smash car windows for burglaries).
Warrick was charged with violation of Health and Safety Code section 11351.5, possession of cocaine base for sale. He was also charged with having a prior serious or violent felony conviction (Pen.Code, §§ 1170.12, subds.(a)-(d) and 667, subds. (b)-(i)) and with prior felony convictions for which he had served prison time. (Pen. Code, § 667.5.)
On June 26, 2002, Warrick filed a motion for pretrial discovery requesting personnel records of the three officers involved in his arrest. The motion requested all complaints related to the officers' acts of aggressive behavior, violence, excessive force, coercion, violation of constitutional rights, and racial, gender, ethnic, and sexual orientation bias. It also requested complaints regarding non-felony moral turpitude conduct within the meaning of People v. Wheeler (1992) 4 Cal.4th 284, 14 Cal.Rptr.2d 418, 841 P.2d 938, including allegations of making false arrests, planting evidence, fabricating police reports and probable cause, testifying falsely, committing perjury, writing false police reports to cover the use of excessive force, and making false or misleading internal reports, including false overtime or medical reports. Additionally, the motion requested any exculpatory or impeaching material within the meaning of Brady v. Maryland (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and sought all statements from the officers involved in the arrest regarding the crime.
The motion encompassed the officers' personnel files and any and all complaint files, including: (1) Advocate Section internal investigation files; (2) division employee folders that included information regarding the officers' conduct, performance, attitudes, and disabilities; (3) employee comment files that contained positive and negative comments of officer performance; (4) use of force reports; (5) medical record files; and (6) ombudsman files related to investigations of employment discrimination claims.
In support of the motion, Warrick's counsel filed a declaration on information and belief. Counsel's declaration stated the following: When the police got out of *813 their car, Warrick, who knew he was the subject of an outstanding parole warrant, began running. He was apprehended after having run 50 to 100 feet. He and the police officers then heard commotion behind them, and turned around to see people pushing, kicking, and fighting each other, and picking rocks up from the ground. An officer told the assemblage to go away. One of the officers stayed with Warrick, requiring him to lie face down while the other two officers picked up the rocks. After they picked up a certain number, the officers announced: "You guys can have the rest." When the officer who had been with Warrick brought him to the police car, one of the other officers told Warrick: "You must have thrown thisthese are yours." Warrick did not possess any rock cocaine when seen by police, did not discard any, and did not possess any cocaine for sale on the day of his arrest. He was present to buy cocaine from another person, who was at the scene when the police arrived. That person did not run, and Warrick ran past him with the police in pursuit.
Counsel's declaration stated that Warrick's defense might be that the officers had planted the cocaine on him by falsely claiming they had seen him discard it. Counsel elaborated that the defense might be that the rock cocaine recovered from the scene was thrown by someone else and, either (1) the officers did not know who had thrown it, so they claimed that they had seen Warrick do it, or (2) the officers knew who had thrown it, but falsely claimed that they had seen Warrick do it. Elsewhere in the declaration counsel stated: "The defense in this case is that in sum the officers are the types of witnesses who cannot be relied upon to be truthful."
Counsel's declaration averred that the information requested by the motion would be used to prove character traits, among them a propensity to engage in aggressive behavior, violence, excessive force, force, lying, perjury, writing false police reports, making false arrests, planting evidence, and other misconduct amounting to moral turpitude. The declaration stated that requested materials would be used by the defense to locate witnesses to testify that the officers had character traits for the varieties of misconduct listed in the motion.
The LAPD opposed the motion, citing, among other grounds, that Warrick's factual scenario was implausible. The court agreed, denying the motion on July 18, 2002. The court commented that in its view, Warrick had failed to establish a plausible factual foundation that an officer had made false accusations or had planted drugs. The court paraphrased Warrick's good cause statement as simply "they must have planted them on me because I didn't have them." Such a statement, the court concluded, was not about police misconduct, but involved a dispute concerning whether Warrick had committed the crime charged. As such, given the paucity of information and the implausibility of Warrick's allegation concerning police misconduct, which the court stated was: "I didn't have drugs. I don't know what they did. But I did not have drugs, therefore they must have done something wrong," the court found Warrick not to have met his burden of demonstrating good cause for an in camera review.
On August 2, 2002, Warrick filed a petition for writ of mandate that this court summarily denied on August 12, 2002. On October 2, 2002, the California Supreme Court granted Warrick's petition for writ of review and directed this court to issue an order to show cause as to why the relief sought by petitioner should not be granted. We issued an order to show cause and obtained briefing.

*814 STANDARD OF REVIEW
A motion for discovery of peace officer personnel records is "addressed solely to the sound discretion of the trial court." (Pitchess v. Superior Court (1974) 11 Cal.3d 531, 535, 113 Cal.Rptr. 897, 522 P.2d 305 (Pitchess).) To exercise judicial discretion, a trial court must know and consider all material facts and all legal principles essential to an informed, intelligent, and just decision. (In re Cortez (1971) 6 Cal.3d 78, 85-86, 98 Cal.Rptr. 307, 490 P.2d 819.) Under the abuse of discretion standard, we will disturb a discretionary trial court ruling only upon a showing of "a clear case of abuse" and "a miscarriage of justice." (Blank v. Kirwan (1985) 39 Cal.3d 311, 331, 216 Cal.Rptr. 718, 703 P.2d 58; Denham v. Superior Court (1970) 2 Cal.3d 557, 566, 86 Cal.Rptr. 65, 468 P.2d 193.) We are not authorized to substitute our judgment for that of the trial judge (Brown v. Newby (1940) 39 Cal.App.2d 615, 618, 103 P.2d 1018), and may find discretion to have been abused only when the trial court "'exceeds the bounds of reason, all of the circumstances before it being considered.'" (People v. Warner (1978) 20 Cal.3d 678, 683, 143 Cal.Rptr. 885, 574 P.2d 1237.)
At all times, the burden of demonstrating good cause is on the party seeking discovery. (City of Fresno v. Superior Court (1988) 205 Cal.App.3d 1459, 1473, 253 Cal.Rptr. 296.)

DISCUSSION
Pitchess, supra, 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 established a criminal defendant's limited right to discover peace officer personnel records. (California Highway Patrol v. Superior Court (2000) 84 Cal.App.4th 1010, 1019, 101 Cal.Rptr.2d 379.) In Pitchess, the defendant was charged with battery against several deputy sheriffs. He served a subpoena duces tecum on the sheriff for production of investigations of prior complaints against his arresting officers concerning their propensity for violence. The defendant asserted that he intended to establish that he acted in self-defense in response to the deputies' use of excessive force. A declaration in support of the subpoena named two people who had previously filed complaints against the deputies but who were unavailable for interview, and two other people who had filed complaints, but did not recall the details of what had transpired. The California Supreme Court upheld a subpoena requiring production of the documents, finding that they were material because they could be used to cross-examine the officers and were relevant and admissible as character evidence of their propensity to engage in violence. (Pitchess, at p. 537, 113 Cal.Rptr. 897, 522 P.2d 305.)
Pitchess' holding was codified in 1978 through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. The Penal Code provisions define peace officer personnel records as confidential, subject to discovery only under provisions set forth in the Evidence Code sections 1043 and 1045. (Pen.Code, §§ 832.7, 832.8.) "In enacting [Evidence Code] sections 1043 and 1045 the Legislature clearly intended to place specific limitations and procedural safeguards on the disclosure of peace officer personnel files which had not previously been found in judicial decisions." (City of Santa Cruz, supra, 49 Cal.3d at pp. 93-94, 260 Cal.Rptr. 520, 776 P.2d 222.)
Evidence Code sections 1043 and 1045 establish a two-step process for discovery of peace officer personnel records. The first step, set forth in Evidence Code section 1043, requires a written motion and notice to the governmental agency having *815 custody of the records sought. The motion must include a description of the type of records sought and declarations showing good cause for their discovery. The declarations must set forth the materiality of the records to the subject matter of the pending case, and state upon reasonable belief that the governmental agency has the records or information from the records. (Evid.Code, § 1043.)[1]
A showing of "good cause" under Evidence Code section 1043 requires the moving party to provide a "specific factual scenario" that establishes a "plausible factual foundation" for the allegations of officer misconduct committed in connection with the defendant. (City of Santa Cruz, supra, 49 Cal.3d at pp. 85-86, 260 Cal. Rptr. 520, 776 P.2d 222; see also City of San Jose v. Superior Court (1998) 67 Cal. App.4th 1135, 1146-1147, 79 Cal.Rptr.2d 624, California Highway Patrol v. Superior Court, supra, 84 Cal.App.4th at p. 1019, 101 Cal.Rptr.2d 379.) Without a "specific factual scenario" establishing a "plausible factual foundation" for allegations of police misconduct, the trial court cannot properly determine whether the discovery or disclosure sought is material. (City of San Jose v. Superior Court, supra, 67 Cal.App.4th at p. 1147, 79 Cal.Rptr.2d 624.)
The "good cause" test of Evidence Code section 1043 is similar to the "plausible justification" test enunciated in the California Supreme Court's pre-Pitchess cases. (People v. Memro (1985) 38 Cal.3d 658, 678-679, 214 Cal.Rptr. 832, 700 P.2d 446, fn. 19 (Memro).)[2]
A finding of "good cause" under Evidence Code section 1043, subdivision (b) initiates the second step of the procedure, an in camera review of information to determine whether it should be released. (City of Santa Cruz, supra, 49 Cal.3d at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222.) The Evidence Code section 1043 good cause requirement embodies a "relatively *816 low threshold for discovery." (City of Santa Cruz, at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222.) "The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense." (Id, at p. 84, 260 Cal.Rptr. 520, 776 P.2d 222.) The "relatively relaxed" standards for in camera reviews are balanced by the protective provisions governing in camera review. (Ibid.) The statutory scheme "strikes a fair and workable balance between the need of criminal defendants for `all relevant and readily accessible information' ... and the legitimate concerns of peace officers to shield from disclosure confidential information not essential to an effective defense or otherwise obtainable from other nonprivileged sources." (Id. at p. 94, 260 Cal.Rptr. 520, 776 P.2d 222.)
Warrick contends that the trial court abused its discretion in denying his motion because his allegations were plausible and sufficient to meet the low threshold necessary to an in camera review.
The court, in denying the motion, commented: "It appears to me that this is not police misconduct but really an argument about what happened, one that should be resolved by the trial court, but not one that gives rise to looking at a police personnel file, based on the paucity of information and the implausibility of the defendant's allegation as to why somehow these officers must have engaged in misconduct: Because `I didn't have drugs. I don't know what they did, but I did not have drugs, therefore they must have done something wrong.' I just don't see it."
Warrick's factual scenario, which admits everything in the police report except that he had had cocaine when observed by the officers and that he was the person who threw the 42 rocks of cocaine to the ground, is consistent with either a good faith mistake in observation by the officers or intentional misconduct on their part. To the extent that the scenario suggests intentional misconduct, that misconduct is a false report by the officers that they had seen Warrick possess and discard the cocaine recovered from the scene of his arrest.
Warrick's version of events is sufficiently specific to constitute a "specific factual scenario" and is more than a general denial of the charges. In People v. Hustead (1999) 74 Cal.App.4th 410, 416-418, 87 Cal. Rptr.2d 875, the appellate court reversed a trial court denial of a discovery motion for peace officer personnel records, finding the defendant, who was charged with evasion of a police officer, had met his burden of justifying an in camera review of the officer's files with respect to dishonest acts. The declaration of counsel supporting the motion stated that the defendant's defense would be that he did not drive in the manner described in the police report, that his driving route was different from that stated in the report, and that the habits, customs, and credibility of the reporting officer would be a material issue at trial. The court explained that because the discrepancy between the police report and the defendant's version of events led to the reasonable inference that the arresting officer may not have been truthful, it established good cause for an in camera review. (Id. at p. 418, 87 Cal.Rptr.2d 875.)
The factual scenario described in this case is no less specific than that in Hustead. Counsel's declaration alleged that the officers involved in Warrick's arrest falsely stated that they had observed him possess and discard the 42 rocks of cocaine. It conceded the truth of remaining factual allegations of the police report, and it described a scenario that explained why Warrick was unable to describe who, specifically, *817 had thrown the cocaine that he denied had been his.
Where this case departs from Hustead is with respect to the second element of good cause, the articulation of a "plausible factual foundation." The Hustead court found, without analysis, that the defendant's scenario of police fabrication was sufficiently plausible. In doing so, the court used the term "plausible factual foundation" as if it were synonymous with "good cause." (People v. Hustead, supra, 74 Cal.App.4th at pp. 416-117, 87 Cal. Rptr.2d 875.)
The California Supreme Court delineated the "plausible factual foundation" requirement of good cause under Evidence Code section 1043 in City of Santa Cruz. There the defendant was charged with battery against a police officer. His attorney's declaration stated on information and belief that the arresting officers had used excessive force to an extent that made the defendant's arrest illegal. The declaration specifically alleged that the officers had grabbed the defendant and handcuffed him, then grabbed him by the hair and threw him to the ground, and that one officer had stepped on his head while another had twisted his arm. The declaration stated that the character, habits, and credibility of the officers would be a material and substantial issue at trial, and that counsel believed that other complaints of excessive force might have been filed against the officers that would show a tendency for them to use excessive force in arrests. (City of Santa Cruz, supra, 49 Cal.3d at p. 79, 260 Cal.Rptr. 520, 776 P.2d 222.)
The Supreme Court held that a showing of good cause had been made for discovery of excessive force and use of violence complaints against the arresting officers because defense counsel's declaration put forth a specific factual scenariouse of excessive forcesupported by a plausible foundationthe police reports indicated that the officers had used considerable force in the arrest. "Viewed in conjunction with the police reports, counsel's averments established] a plausible factual foundation for an allegation of excessive force, put the court on notice that the officers' alleged use of excessive force will likely be an issue at trial, and articulate a valid theory as to how the information sought might be admissible." (City of Santa Cruz, supra, 49 Cal.3d at p. 86, 260 Cal.Rptr. 520, 776 P.2d 222.)
In Memro, supra, 38 Cal.3d at page 685, 214 Cal.Rptr. 832, 700 P.2d 446 which preceded City of Santa Cruz, a murder defendant moved for discovery of records of complaints regarding his interrogating officers' use of excessive force, aggressive behavior, and violence. The motion was supported by a police report and a declaration of counsel stating that the defendant's confession "`came after an illegal arrest, promises of leniency, and threats of violence.'" The declaration averred that the requested information would be material to show the officers' common plan, motive, or intent to coerce confessions. (Id. at pp. 680-681, 214 Cal.Rptr. 832, 700 P.2d 446.) Counsel also alleged that five or six other detainees and arrestees had been subjected to coerced confessions. The Supreme Court found the declaration to be sufficient since it articulated a theory for use of the information in litigating whether the defendant's confession had been coerced. (Id, at p. 682, 214 Cal.Rptr. 832, 700 P.2d 446.)
Among the issues considered by the Memro court was whether counsel's declaration had shown a "plausible justification" for the requested information. In concluding in the affirmative, the Supreme Court noted that "Pitchess made it clear that `an accused ... may compel discovery by demonstrating that the requested information *818 will facilitate the ascertainment of the facts and a fair trial.... The requisite showing may be satisfied by general allegations which establish some cause for discovery other than "a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." ...'" (Memro, supra, 38 Cal.3d at pp. 677-678, 214 Cal.Rptr. 832, 700 P.2d 446, citing Pitchess, supra, 11 Cal.3d at pp. 536-637, 113 Cal.Rptr. 897, 522 P.2d 305.) Since evidence regarding complaints of prior violence by the interrogating officers might have been admissible or might have led to other admissible evidence on the issue of whether the defendant's confession had been coerced, the court found that counsel's allegations sufficiently "set forth the materiality" of the requested information. (Memro, at p. 682, 214 Cal.Rptr. 832, 700 P.2d 446.)[3]
Warrick asserts that the police misconduct he alleges is no less plausible than that alleged in Memro. We disagree. Warrick's factual scenario is based on the assertion that he was about to buy drugs, not sell them, when the police arrived. Through counsel he says that he was standing in back of a prospective seller when the police arrived. But he does not dispute the materially inconsistent fact that his total funds for his purchase were $2.75. Nor does he deny that he was arrested with a plastic baggie in his left hand. Other undisputed facts add to the implausibility of the scenario. Any person in Warrick's vicinity when the police arrived was out of harm's way once the officers began running after Warrick. Accordingly, it would have been unreasonable for any other person to discard the 42 rocks of cocaine, and even more unreasonable to do so in full view of bystanders. Moreover, it defies belief that a person would have followed behind Warrick and pursuing police in order to discard the cocaine in Warrick's proximity, in the middle of a street.
On this record the trial court could reasonably find that Warrick's scenario was not objectively plausible, i.e., that no reasonable person would find it plausible. Memro is distinguishable because there the court considered two diametrically opposed but internally consistent versions of events, and collateral evidence supported rather than detracted from the moving party's allegations. This is not to say that collateral supportive evidence is necessary for a plausible factual foundation, only that it contributes to that finding.
"Plausible" means "seemingly true" (Webster's New World Diet. (2nd college ed.1978) p. 1091), "having an appearance of truth or reason; seemingly worthy of approval or acceptance; credible; believable: a plausible excuse; a plausible plot." (The Random House Diet, of the English Language (2d ed. unabridged 1987, p. 1484). It denotes a degree of reasonable probability, a degree of apparent credibility greater than mere possibility. Warrick's factual scenario does not meet that standard.
*819 Warrick maintains that in finding his factual scenario to be implausible the court impermissibly substituted its determination for that of the trier of fact in deciding the ultimate issue. Again we disagree. A determination of plausibility is a necessary element in a trial court's evaluation of good cause. Although the threshold for finding a "specific factual scenario" establishing a "plausible factual foundation" is relatively low, it is not non-existent, and a determination of good cause for in camera review is an exercise of discretion, not a ministerial act.
There are additional defects with the motion that support the trial court's finding that Warrick did not meet his burden of demonstrating good cause. A showing of good cause must be based on a discovery request tailored to the specific officer misconduct alleged in the motion (California Highway Patrol v. Superior Court, supra, 84 Cal.App.4th at p. 1021, 101 Cal.Rptr.2d 379). "[0]nly documentation of past officer misconduct which is similar to the misconduct alleged by defendant ... is relevant and therefore subject to discovery." (Id. at p. 1021, 101 Cal. Rptr.2d 379.) That is, a defendant's assertion that an officer had filed a false report of his arrest is not good cause for a request for records reflecting time card irregularities, because evidence of time card irregularities would not establish a habit or custom or reputation for making false police reports. (Id. at p. 1023, 101 Cal. Rptr.2d 379.)
Since the vast majority of categories of possible misconduct recited in Warrick's motion find no support in the factual scenario stated in counsel's declaration, good cause for production of information related to them was non-existent at the outset. Only information concerning complaints against any of the three officers alleging that they had made false statements in police reports would have been relevant to petitioner's charge that they did so with respect to his arrest. That Warrick invoked People v. Wheeler, supra, 4 Cal.4th 284, 14 Cal.Rptr.2d 418, 841 P.2d 938 in his request does not change this rule. Wheeler does not entitle a defendant to obtain police personnel records reflecting moral turpitude without first meeting the good cause requirement of Evidence Code section 1042. California Highway Patrol v. Superior Court, supra, 84 Cal. App.4th at p. 1024, 101 Cal.Rptr.2d 379.) "[A]n accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial." (Pitchess, supra, 11 Cal.3d at p. 536, 113 Cal.Rptr. 897, 522 P.2d 305, italics added.) We agree with the trial court that Warrick failed to make this showing.

DISPOSITION
The petition is denied. The alternative writ is discharged. The stay is dissolved.
We concur: DOI TODD and ASHMANN-GERST, JJ.
NOTES
[1] Evidence Code section 1043 provides: "(a) In any case in which discovery or disclosure is sought of peace or custodial officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from those records, the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body upon written notice to the governmental agency which has custody and control of the records. The written notice shall be given at the times prescribed by subdivision (b) of Section 1005 of the Code of Civil Procedure. Upon receipt of the notice the governmental agency served shall immediately notify the individual whose records are sought. [¶] (b) The motion shall include all of the following: [¶] (1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace or custodial officer whose records are sought, the governmental agency which has custody and control of the records, and the time and place at which the motion for discovery or disclosure shall be heard. [¶] (2) A description of the type of records or information sought. [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records. [¶] (c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of the hearing by the governmental agency identified as having the records."
[2] Prior to adoption of the California Evidence Code, both federal and California decisions had established a criminal defendant's right to the production of meaningful evidence in the hands of the prosecution absent some overriding public interest, upon some degree of specificity and a showing of "plausible justification." (People v. Superior Court (1971) 19 Cal.App.3d 522, 529, 97 Cal.Rptr. 118; Ballard v. Superior Court (1966) 64 Cal.2d 159, 167, 49 Cal.Rptr. 302, 410 P.2d 838.)
[3] The majority decision in Memro reversed the judgment and sent the matter back to the trial court for discovery under the defendant's Pitchess motion. This unfortunate result had the impact of reversing a capital case and giving the convicted defendant a new trial, without knowing what was contained in the police officers' files. In his concurrence and dissent, Justice Grodin pointed out that the appropriate procedure should be a conditional reversal. He explained that the matter should be remanded to have the trial court fulfill its obligations under the Pitchess motion. If discovery was negative, the judgment of conviction would be affirmed, obviating the need to go through the inconvenience and expense of a new trial. (Memro, supra, 38 Cal.3d at pp. 705, 707-710, 214 Cal.Rptr. 832, 700 P.2d 446.)