Filed 3/3/14  P. v. Meighan CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DEANDRE D. MEIGHAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B245647<br>(Super. Ct. No. MA055049)<br>(Los Angeles County) |

Deandre D. Meighan appeals from the judgment after a jury convicted him of assault with a deadly weapon (ADW). (Pen. Code, § 245, subd. (a)(1).)[1] Appellant was sentenced to fours year state prison and claims the trial court committed discovery, evidentiary, and sentencing errors.  We strike the $400 domestic violence fine (§ 1203.097) and affirm the judgment as modified.

*Facts and Procedural History*

On January 5, 2012, appellant visited his estranged wife, Latassha White, at her work place to borrow $20.  White was seven months pregnant with appellant's third child and angry that he was seeing another woman, Ashley Arredondo.  A few months earlier, White saw a computer video of appellant and Arredondo having sex.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

White gave appellant the money, saw Arredondo seated in appellant's gold Monte Carlo, and asked for the money back. Arredono was incensed, banged her fists on White's car hood, and yelled "Bitch I'm going to fucking kill you." White broke down crying, feared for her safety, and tried to escape on the Antelope Freeway (14 Freeway).

Off-duty Deputy Sheriff Michael Rose, saw the gold Monte Carlo speed by at a high rate of speed (70 to 80 miles per hour) and sideswipe the Ford Taurus driven by White. The Monte Carlo sideswiped the Tauras a second time on the off ramp. Due to the speed of the vehicles, Rose feared the Tauras would flip over the freeway embankment

After White exited the freeway, appellant "spun donuts" around the Taurus. White tried to flag down help and drove southbound on 15th Street with appellant in pursuit, traveling 90 miles per hour. Another motorist called 911 and a sheriff's department motorcycle deputy pulled White over. The gold Monte Carlo fled the scene.

White was transported to the hospital and gave a statement to the police. Deputy Rose reported that a black male was driving the Monte Carlo but was not asked to identify the driver.

White recanted at trial and said that she "accidentally rear-ended" the Monte Carlo as they were "merging off the freeway." Photographs were received into evidence showing no damage to the rear end of the Monte Carlo and no front end damage to the Taurus.

Appellant defended on the theory that White was jealous, chased him and Arredondo, and rear-ended the Monte Carlo multiple times. Ashley Arredondo was shown a picture of the Monte Carlo and said it was "a miracle" that the car sustained no rear end damage.

*Pitchess Motion*

Appellant complains that the trial court abused its discretion when it denied his *Pitchess* discovery motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531) without conducting an in camera hearing. (Evid. Code, § 1043 et seq.) Before trial, appellant sought discovery of Deputy Rose's personnel records. The motion was a boilerplate

2

request for all reports of police misconduct.[2] The supporting declaration stated that appellant "contests the veracity of Deputy Rose's statement. Defense denies that Meighan side swiped or tried to run the Taurus off the road. The Tauras driven by White hit [appellant's] vehicle and was following him. The requested discovery would be used to impeach Deputy Rose[] at trial with similar acts of providing false accounts or fabricating charges."

Denying the motion, the trial court found "no good cause to go in charmbers with regard to Deputy Rose's personnel file . . . ." We review for abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330.) It is settled that police personnel records are not discoverable unless the *Pitches* motion "describe[s] a factual scenario that would support a defense claim of officer misconduct. [Citation.]" (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 71.)

Here the moving papers disputed Deputy Rose's account of the events. But, the motion had nothing to do with misconduct by an arresting officer. Deputy Rose did not know appellant's identity and was not present when appellant was arrested at home. He was no more than a witness reporting a freeway hit and run. There was no good cause for discovery of his personnel files. (Levinson, Cal. Criminal Procedure (Rutter 2013) § 16:29, p. 16-26; Cont.Ed.Bar, Cal. Evidence Benchbook (4th ed. 2013) § 44.20, p. 1020.) Evidence Code section 1047 provides: "Records of peace officers . . . who either were not present during the arrest or had no contact with the party seeking disclosure from the time of the arrest until the time of booking, or who were not present at the time the conduct is alleged to have occurred within a jail facility, shall not be subject to disclosure." Nor can

---

[2] The motion sought the discovery of: "All complaints from any and all sources relating to acts [in] violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence amounting to moral turpitude . . . ."

a defendant seek discovery of police personnel files based on the bald hypothesis that police officers lie. (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1318.)

The trial court reasonably concluded that no prima facie showing was made for an in camera review of the personnel records. "[Evidence Code] section 1047 constitutes a specific exemption from general discovery provisions of sections 1043 and 1045. . . . [T]he section prohibits from discovery under sections 1043 and 1045, personnel records for peace officers who were not present during the arrest or who had no contact with the party seeking disclosure between the arrest and the booking." (*Alt v. Superior* (1999) 74 Cal.App.4th 950, 952.) If the rule were otherwise, it would "effectively abrogate the good cause requirement . . . permitting fishing expeditions into the . . . officers' personnel file in virtually every criminal case." (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1024.)

*White's Pregnancy*

Appellant claims that the trial court erred in receiving evidence that White was seven months pregnant. The evidence was relevant to show the likelihood of great bodily injury. Appellant was charged with ADW by means of force likely to produce great bodily injury. The jury was instructed: "G*reat bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (CALCRIM 875.)

A defendant who commits an ADW takes the victim as he finds him or her. The assault of a professional football player is less likely to result in great bodily injury than an assault of a woman who is seven months pregnant. Had the victim been a frail elderly woman or a victim with a pre-existing medical condition, evidence of the victim's physical or medical condition would be relevant to show that the force used was likely to cause great bodily injury. So too here. The trial court did not err in ruling that the probative value of the evidence outweighed the potential for prejudice. (Evid. Code, § 352.) The ruling will not be disturbed absent a showing the trial court exercised its discretion in an arbitrary, capricious, and patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1004.)

4

Appellant asserts that the pregnancy evidence violated his due process rights but waived the issue by not objecting on that ground at trial. (See e.g., *United States v. Olano* (1993) 507 U.S. 725, 731-732 [123 L.Ed.2d 508, 517-518]; *People v. Partida* (2005) 37 Cal.4th 428, 434-435.) Waiver aside, the application of ordinary rules of evidence under state law does not violate a federal constitutional right to present a defense or right to a fair trial. (*People v. Dement* (2011) 53 Cal.4th 1, 52; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103.)

*Domestic Violence Fine*

Appellant argues, and the Attorney General, agrees that the trial court erred in imposing a $400 domestic violence fine. (§ 1203.097.) Section 1203.097 applies where the defendant is granted probation for a crime of domestic violence. Appellant was denied probation and sentenced to four years state prison.

*Conclusion*

Appellant finally contends that the cumulative effect of the alleged errors denied him a fair trial. Finding no error or resulting prejudice. we reject the claim of cumulative error. (*People v. Tully* (2012) 54 Cal.4th 952, 1061.) The $400 domestic violence fine is stricken. The judgment, as modified, is affirmed,

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:


        GILBERT, P.J.


        PERREN, J.

5

Daviann L. Mitchell, Judge

Superior Court County of Los Angeles

_____

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Herbert S. Tetef and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.