Filed 3/5/15  In re C.V. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.V., a Person Coming Under the Juvenile Court Law. | B247949 |
| _____ | (Los Angeles County |
| THE PEOPLE, | Super. Ct. No. VJ42119) |
| Plaintiff and Respondent, | |
| v. | |
| C.V., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Brown, Judge.  Affirmed.

Law Offices of Sarah A. Stockwell and Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

A petition filed under Welfare and Institutions Code section 602 alleged that appellant C.V. committed vandalism (Pen. Code, § 594, subd. (a)).[1] After an adjudication hearing, the juvenile court sustained the petition and released C.V. home on probation.

The judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

Cindy Ward worked as a campus safety officer for the Lynwood Unified School District. On July 19, 2012, she was monitoring surveillance cameras for 19 schools in the district when she saw five individuals jump a gate at Lynwood Middle School and begin "tagging" (i.e., writing graffiti) on school property. Ward identified 14-year-old C.V. as one of those who jumped the gate. She saw C.V. tag a trash can and a wall near the girl's locker room. Ward contacted the police.

Paul Garcia worked as a security guard for the Lynwood Unified School District and he responded to Ward's vandalism alert. While giving sheriff's deputies access to the school grounds, Garcia saw C.V. trying to flee by climbing over a gate. He ordered C.V. to stop and get on the ground. C.V. was detained by the deputies and handcuffed.

C.V. was then taken to a sheriff's station where he was interviewed by Deputy Sheriff Fabiola Pacheco. They spoke in an interview room while C.V. was still handcuffed. His parents were not present. Pacheco read C.V. his *Miranda*[2] rights, which he waived. C.V. wrote and signed the following statement: "I admit to spray painting the school. I know I have made the wrong choice. This would never happen again."

When she testified at the adjudication hearing, Deputy Pacheco denied telling C.V.

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

2

it would be better for him if he confessed. During her cross-examination, the following colloquy occurred:

"Q. Did you tell him that if he just wrote a statement, that it would be better for him?

"A. Did I tell him that, no.

"Q. You didn't try to persuade him into writing a statement by telling him it would be [better] for him in the long run?

"A. No."

2. *Defense evidence.*

C.V. testified that on the day in question he had been in Lynwood Park with his sister. On their way home they passed Lynwood Middle School. Spotting some kids he had seen around school, C.V. stopped to talk to them. These kids were spray painting, but C.V. did not participate; he just walked away.

Shown photographs of graffiti on a garbage can and a wall (from People's exhibits Nos. 1 and 7), C.V. denied responsibility for either act of vandalism.

Asked why he signed the statement if he had not done any tagging, C.V. testified: ". . . [Because] Officer Pacheco . . . said that everything will come out way better if I just admit to the charges, so I was just pressured, and I just wanted that day to end already." C.V. testified this was the first time he had ever been arrested.

The following colloquy occurred:

"Q. How did you feel while you were there in the interview room?

"A. I felt pressured, scared.

"Q. Now, you see your initials there at the top of the form and all your rights explained to you. [¶] Did you understand all of your rights?

"A. No.

"Q. When the officer told you that you had the right to remain silent, what did you think?

"A. To not talk.

"Q. Then she asked you if you wanted to talk; correct?

3

"A. Yes.

"Q. And how did you feel when she asked you that?

"A. I shouldn't talk when she told me the rights."

"Q. Why did you talk?

"A. Because I just wanted – I was just pressured and scared. I wanted that day to end. I was just going with the officer.

"Q. Did you believe that you would get to go home faster?

"A. Yes."

C.V. denied having climbed over any of the school fences:

"Q. You heard the testimony about how you were caught going over the gate; correct?

"A. Yes.

"Q. Now, is that . . . how you got in and out of the school?

"A. No.

"Q. How did you get in and out?

"A. There was a hole through one of the gates."

On cross-examination, C.V. acknowledged that, although he had never been arrested before, he had one past experience with the police. He once got into a fight and was interviewed by deputies from the same sheriff's station. C.V. initially denied any involvement in the fight, but subsequently admitted he had committed a battery. He received six months' probation. C.V. testified he had not meant to lie to the deputies when he denied involvement in the battery, explaining:

"A. I was under pressure. I didn't know what to say.

"Q. You were under pressure at that time, too, so you didn't know what to say?

"A. Yes.

"Q. Is that the same way you were under pressure talking to sheriff's deputies again in this case?

"A. Yes."

On redirect examination, C.V. testified:

4

"Q. So at that time you lied because – why?

"A. Because then, again, I was pressured. I just didn't want nothing to happen.

"Q. Were you scared?

"A. Yes.

"Q. Now, you have [the vandalism incident]. [¶] And again, you're talking to the police. [¶] Why do you feel so much pressure when you're talking to the police?

"A. Because I'm afraid to go to jail or something."

3. *Juvenile court's findings*.

During closing argument, C.V.'s attorney questioned Ward's identification of C.V. in two photographs as the person who had tagged a trash can (People's exhibit No. 1) and a wall near the girl's locker room (People's exhibit No. 7), saying: "I don't believe that the People have shown beyond a reasonable doubt that C.V. is the one that committed these acts of vandalism. [¶] He arrived on scene later after they had done all the tagging in this particular alleyway, which is where People's 1 and People's 7 are located, the . . . trash cans and the top of the wall . . . . [¶] As a result, I would argue that C.V. is not guilty of this charge."

The Deputy District Attorney argued the photographs were too grainy and indistinct to effectively impeach Ward's testimony, but then conceded: "That being said, I would agree that there may be an I.D. issue if not for the fact that we have . . . a confession." The Deputy District Attorney challenged the claim Deputy Pacheco had coerced C.V.'s confession: "Any argument that C.V. felt pressured into . . . a false confession I think strains credulity . . . because the minor has had previous contacts with law enforcement. He has prior experience dealing with police officers. He has now lied more than once."

The juvenile court then announced its decision: "I think Miss Ward was credible. I think she was being honest and truthful with the court. But I think she is mistaken as to who did what. [¶] . . . [F]rankly, I am not sure that I would feel there is enough evidence that . . . the petition is true if we only had the testimony of Miss Ward and the exhibits. It really isn't enough, in my opinion, to indicate he was an aider and abettor. There was

5

nothing indicating he was looking out, encouraging or doing anything but being present. [¶] If all I had was Miss Ward's testimony and exhibits I think probably [that] would not be enough. I say probably because I do have more, and that's the statement. [¶] The question is, was he lying in court or was he lying to Pacheco when he wrote the statement? [¶] There was testimony that he has had prior contacts with sheriff deputies. . . . [¶] He's been around the block, apparently. He knows police. He knows what it's like to have contact with police."

The court concluded: "[C.V.] never said that she promised me or induced me. He never said that Pacheco said if you fess up, you will go home. It is in his mind. That is his testimony. He . . . assumed that had he falsely confessed, that he would go home sooner. [¶] . . . I think C.V., even at his age, would [not] falsely confess. . . . [¶] I think he was in fact being truthful when he wrote the statement and gave a verbal statement to Pacheco."

## CONTENTIONS

1. The juvenile court erred by not granting C.V. all of the *Pitchess* discovery he requested.

2. This court should conduct an independent review of the in camera *Pitchess* proceedings.

## DISCUSSION

1. *Trial court's ruling on C.V.'s* Pitchess *motion did not result in any prejudicial error.*

C.V. contends the juvenile court erred when it failed to grant him *Pitchess* discovery on all the grounds he requested. We conclude that any error the court committed was harmless.

a. *Legal principles.*

"Evidence Code sections 1043 and 1045, which codified our decision in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 . . . , allow discovery of certain relevant information in peace officer personnel records on a showing of good cause. Discovery is a two-step process. First, defendant must file a motion supported by declarations

6

showing good cause for discovery and materiality to the pending case. [Citation.] This court has held that the good cause requirement embodies a 'relatively low threshold' for discovery and the supporting declaration may include allegations based on 'information and belief.' [Citation.] Once the defense has established good cause, the court is required to conduct an in camera review of the records to determine what, if any, information should be disclosed to the defense. (Evid. Code, § 1045, subd. (b).) The statutory scheme balances two directly conflicting interests: the peace officer's claim to confidentiality and the defendant's compelling interest in all information pertinent to the defense. [Citation.]" (*People v. Samuels* (2005) 36 Cal.4th 96, 109.)

The good cause showing under Evidence Code section 1043 requires a "specific factual scenario" establishing a "plausible factual foundation" for the allegations of police misconduct. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 85, 86.) "[A] plausible scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1026, italics added.) Once the good cause showing has been made, the "trial court may then disclose information from the confidential records that 'is relevant to the subject matter involved in the pending litigation' (Evid. Code, § 1045, subd. (a)), provided that the information does not concern peace officer conduct occurring more than five years earlier." (*People v. Gaines* (2009) 46 Cal.4th 172, 182.)

A trial court's ruling on whether a motion to discover police personnel records has been supported by good cause is reviewed for an abuse of discretion. (*People v. Lewis* (2006) 39 Cal.4th 970, 992.) However, even if a court erroneously denies a *Pitchess* motion, reversal is not required unless the defendant can demonstrate prejudice. (See *People v. Samuels, supra,* 36 Cal.4th at p. 110 ["even if the trial court erred because defendant made a showing of good cause in support of his [*Pitchess*] request . . . , such

7

error [may be] harmless [under *Watson*[3]]"]; *People v. Memro* (1985) 38 Cal.3d 658, 684, disapproved on another ground in *People v. Gaines*, *supra*, 46 Cal.4th at p. 181, fn. 2 ["It is settled that an accused must demonstrate that prejudice resulted from a trial court's error in denying discovery."].)

        b. *C.V.'s* Pitchess *motion.*

C.V. filed a pre-trial *Pitchess* motion seeking discovery of the following material: "All complaints from any and all sources relating to acts of aggressive behavior, violence, excessive force, or attempted violence or excessive [force], racial bias, gender bias, ethnic bias, sexual orientation bias, coercive conduct, violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion and/or probable cause, illegal search/seizure; false arrest, perjury, dishonesty, writing of false police reports, writing of false police reports to cover up the use of excessive force, planting of evidence, false or misleading internal reports including but not limited to false overtime or medical reports, and any other evidence of misconduct amounting to moral turpitude within the meaning of *People v. Wheeler* (1992) 4 Cal.4th 284 [(*Wheeler*)] against Deputy F. Pacheco (#486370)." The motion also asked for "[a]ny other material which is exculpatory or impeaching within the meaning of *Brady v. Maryland* (1963) 373 U.S. 83."

C.V.'s attorney filed an accompanying declaration asserting, upon information and belief, that Pacheco "made material misstatements with respect to the minor's alleged confession. [¶] [C.V.] was not involved in the vandalism to the school. There were three other young men who ran from the scene, however, [C.V.] did not run because he was not involved in the tagging. School officer Garcia grabbed him because he was the only one who did not run. [¶] C.V. explained to Deputy Pacheco that he was not involved, but the deputy coerced him into signing a confession. [C.V.] was told that if he did not, it would be 'worse' for him. Because he wanted to go home and he felt pressured by the deputy, he wrote that he committed the vandalism. [¶] The officer

---

**3**      *People v. Watson* (1956) 46 Cal.2d 818.

made material misstatements with respect to the observations [*sic*], including fabricating minor's alleged 'confession' and the reporting of [C.V.'s] alleged statements. Deputy Pacheco deliberately left out C.V.'s denials from the report."

The juvenile court ruled there was good cause for *Pitchess* discovery only as to potential evidence of perjury, dishonesty, writing false reports and fabrication of charges. Discovery was denied as to all the other requested categories. After conducting an *in camera* review of the personnel documents produced by the custodian of records, the court granted C.V. discovery of one citizen complaint.

c. *Discussion*.

C.V. now contends the juvenile court "abused its discretion in denying the [*Pitchess*] motion in regards to evidence of [Pacheco's] aggressive behavior, bias based on race, gender, ethnicity, or sexual orientation, coercive conduct, violation of constitutional rights, fabrication of charges, fabrication of evidence, fabrication of reasonable suspicion, fabrication of probable cause, perjury, dishonesty, writing of false police reports, any other evidence of moral turpitude pursuant to [*Wheeler*], and any evidence that would be exculpatory or impeaching under *Brady*."

As we shall explain, we reject C.V.'s claim the juvenile court abused its discretion in making its "good cause" ruling – with the possible exception of a single category. However, because it is clear from the record there could have been no resulting prejudice stemming from this one possible mistake, we conclude C.V. has failed to demonstrate *Pitchess* error.

C.V.'s discovery motion claimed Deputy Pacheco coerced him into making a false confession by saying it would be worse for him if he did not confess.[4] The juvenile court ruled there was good cause for *Pitchess* discovery as to potential evidence of perjury, dishonesty, writing false reports and fabrication of charges. In his opening brief, C.V. contends the trial court erred by denying discovery of complaints related to fabrication of

---

[4]     When C.V. testified at the adjudication hearing he gave a slightly different version of what happened, claiming Pacheco "said that everything will come out way better if I just admit to the charges."

9

charges, perjury, dishonesty and writing false police reports. But, of course, these are precisely the categories of complaints to which the trial court *did* grant discovery.

The juvenile court properly denied C.V.'s requests for complaints relating to the following categories: violation of constitutional rights; fabrication of evidence, reasonable suspicion and probable cause; racial, gender, ethnic or sexual orientation bias; aggressive behavior. These categories were either essentially redundant to the categories granted (e.g., "fabrication of evidence"), overly vague (e.g., "aggressive behavior" or "violation of constitutional rights"), or entirely unrelated to C.V.'s good cause showing (e.g., "racial bias" or "fabrication of probable cause"). (See *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 71 [*Pitchess* discovery is " 'limited to instances of officer misconduct related to the misconduct asserted by the defendant' "]; *People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [overbroad discovery request is properly narrowed by the trial court to misconduct similar to that alleged: when defendant asserts confession was product of coercive interrogation techniques, request for excessive force complaints is "overly broad"]; *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021 [allegation officer made false statements in a police report does not justify discovery of records of his dishonesty in other contexts].)

The request for "any other evidence of misconduct amounting to moral turpitude within the meaning of *People v. Wheeler* (1992) 4 Cal.4th 284,"[5] was properly denied. Although the honesty of Deputy Pacheco was at issue, "[t]o grant discovery of peace officer personnel records on the basis that *Wheeler* permits discovery of all personnel records reflecting officer misconduct involving moral turpitude, without requiring defendant to comply with the good cause requirement of Evidence Code section 1043, would have the effect of destroying the statutory scheme. Defendants could assert merely that police officers are known to lie, and thereby obtain discovery of all information contained in an officer's personnel records which potentially reflects on the officer's

---

[5]     *Wheeler* "held that nonfelony conduct involving moral turpitude is admissible to impeach a witness in a criminal case." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 21.)

10

credibility. This procedure would effectively abrogate the good cause requirement set forth in the Evidence Code and approved and applied by our Supreme Court, by permitting fishing expeditions into the arresting officers' personnel records in virtually every criminal case." (*California Highway Patrol v. Superior Court*, *supra*, 84 Cal.App.4th at p. 1024.)

As to C.V.'s *Brady* request for exculpatory or impeachment evidence favorable to the defense, the prosecution has an independent legal obligation to produce that material. For this reason, *People v. Coleman* (2014) 230 Cal.App.4th 1379, denied a hybrid *Brady*/*Pitchess* motion seeking an officer's criminal history, saying: "[W]e conclude the prosecution has a duty pursuant to *Brady* to learn of and disclose material impeachment information about police officer witnesses within the prosecution's constructive possession, but the prosecution cannot be forced to comply with its *Brady* duty to investigate in a particular manner." (*Coleman*, at p. 1390.)[6] Hence, "[e]ven when material information is within the constructive possession of the prosecution, *Brady* does not empower a defendant to compel the precise manner by which prosecutors learn whether such information exists," because "that choice 'generally is not subject to supervision by the judicial branch.' [Citation.]" (*Id.* at pp. 1390, 1391.)

The only category the trial court arguably should have included in its discovery order was "coercive conduct." That is because C.V. was only 14 years old and he alleged Deputy Pacheco had coerced him into signing the statement by saying it would be worse for him if he did not confess. As our Supreme Court has explained: "[C]ourts must use ' "special care in scrutinizing the record" ' to evaluate a claim that a juvenile's custodial confession was not voluntarily given. [Citation.] 'If counsel was not present for some

---

[6]     Our Supreme Court has granted review in *People v. Superior Court* (*Johnson*) 179 Cal.Rptr.3d 156 (review granted September 18, 2014, S221296) to address these issues: (1) Does the prosecution have a duty to review peace officer personnel files to locate material that must be disclosed to the defense under *Brady v. Maryland* (1963) 373 U.S. 83; (2) Does the prosecution have a right to access those files absent a motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531; and (3) Must the prosecution file a *Pitchess* motion in order to disclose such *Brady* material to the defense?

11

permissible reason when [a juvenile's] admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair.' [Citation.] Consequently, even when a juvenile has made a valid waiver of the *Miranda* rights, a court may consider whether the juvenile gave a confession after being ' "exposed to any form of coercion, threats, or promises of any kind, [or] trickery or intimidation. . . ." ' [Citation.] The constitutional safeguard of voluntariness ensures that any custodial admission flows from the volition of the juvenile, and not the will of the interrogating officers." (*People v. Nelson* (2012) 53 Cal.4th 367, 379, fns. omitted.)

Certainly it is proper for the police to inform suspects it would be better for them to tell the truth. "Mere advice or exhortation by the police that it would be better for the accused to tell the truth, when unaccompanied by either a threat or a promise, does not . . . make a subsequent confession involuntary." (*People v. Boyde* (1988) 46 Cal.3d 212, 238.) However, telling a suspect it would be better "to confess" where the particular context implies the unspoken words "even if you're innocent" does raise concerns under *Nelson* when the suspect is a juvenile.

However, we need not decide this issue about the voluntariness of juvenile confessions[7] because, even if the trial court erred by denying discovery of coercive conduct complaints, it is clear from the record there were no such complaints against Pacheco. (See *People v. Cruz* (2008) 44 Cal.4th 636, 670-671 ["Nor could defendant demonstrate prejudice on a finding of error, as county counsel's representations at the hearing on the motion below, and the trial court's statements upon completion of its review of Deputy Perrigo's confidential personnel files, together make clear that no information of the nature being sought through the discovery motion was to be found in

---

**7** We would note there were several factors tending to show C.V.'s confession had not been coerced. This was not his first experience in custody as a police suspect, and it appears the "pressure" he felt may have been no more than nervousness at having been accused of a crime, rather than a reaction to anything Pacheco said to him.

12

any of the three officers' personnel files."]; *People v. Coleman*, *supra*, 230 Cal.App.4th at p. 1393 ["Here as in *Cruz*, there was 'no information of the nature being sought' in Officer Stonebreaker's personnel file and, as a result, Coleman cannot demonstrate prejudice from the denial of his *Pitchess* motion seeking Officer Stonebreaker's rap sheet."].)

At the in camera *Pitchess* hearing in this case, the custodian of records (who had been sworn in) showed the trial court "all of the complaints [against Pacheco] within the five-year period," and the trial court independently and expressly reviewed each complaint. As a result, there exists an adequate record for appellate review and it is apparent that none of the undisclosed complaints related to coercive conduct while dealing with suspects.

Hence, we conclude that – even if the juvenile court abused its discretion by not granting *Pitchess* discovery to the category of "coercive conduct" – any error was necessarily harmless.

2. *Review of in camera* Pitchess *hearing.*

C.V. requests review of the juvenile court's in camera ruling on his *Pitchess* motion. Review of the in camera hearing by this court reveals no abuse of the trial court's discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1232.)

13

DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

14