[No. F029647. Fifth Dist. Aug. 20, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
ZANE IRA HUSTEAD, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, parts I, II, IV and V of this opinion are not certified for publication.

## COUNSEL

Robin M. Walters for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARDAIZ, P. J.**—Appellant, Zane Ira Hustead, was charged with felony evasion of arrest (Veh. Code, § 2800.2), and resisting arrest (Pen. Code, § 148), on August 19, 1997. It was further alleged that appellant had suffered two prior convictions within the meaning of Penal Code sections 667, subdivisions (c) through (j) and 1170.12, subdivisions (a) through (e). Appellant pled not guilty to both counts and denied the allegations.

On August 28, 1997, appellant made a *Pitchess*[1] motion. At the hearing on the motion, the prosecution moved to dismiss the resisting arrest charge in furtherance of justice. The trial court then denied the *Pitchess* motion.

After a trial by jury, appellant was convicted of felony evasion of arrest. In a bifurcated proceeding the jury found appellant's prior convictions true.

Appellant was sentenced to 25 years to life under the "Three Strikes" law. Appellant subsequently filed a timely notice of appeal.

On appeal, appellant claims numerous instructional errors, prosecutorial misconduct, that the trial court erroneously denied his *Pitchess* motion, that he was denied a fair trial, and that there was insufficient evidence to support the verdict. We find the trial court erred in denying appellant's *Pitchess* motion and will remand for a limited hearing on that issue. In all other respects the judgment is affirmed.

### FACTS

The testimony at trial established the following. Officer Bianco testified that on August 2, 1997, at approximately 8:15 p.m. he was on duty in full uniform accompanied by his canine partner, and driving a marked patrol vehicle. While awaiting a red light on 21st Street he noticed a Chevy Camaro screeching its tires and pass in front of him on Chester Avenue. He observed the vehicle accelerate rapidly reaching speeds of up to 50 miles per hour. Officer Bianco followed the vehicle and stopped behind it at 23rd

---

[1] *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

Street at a red light. At that point, the officer notified the dispatcher that he would be stopping the vehicle.

Officer Bianco activated his overhead lights on 24th Street. Once the officer activated his lights, the Camaro began to accelerate and the officer followed. The Camaro accelerated to 30 to 40 miles per hour and made an abrupt lefthand turn onto 25th Street without slowing. The speed limit on Chester Avenue was 25 miles per hour. The officer testified that there were other vehicles around the Camaro at this time. The officer followed and sounded his siren. After a few moments, Officer Bianco realized the car was not going to stop, so he turned his siren on so that it would stay on. Officer Bianco followed the car through another left-hand turn at a speed of approximately 45 miles per hour. The speed at which the car was traveling caused the car to lose traction and slide around the corner.

During the chase, the car ran numerous stop signs. The officer testified that the car failed to slow through the intersections. Officer Bianco continued to follow the car, which was traveling over 50 miles per hour and which failed to stop at yet another stop sign. At this point the officer saw a Suburban, which was sliding on the roadway to avoid a collision with the Camaro. The officer observed the Suburban come to a stop, and it appeared that its occupants were not injured, so he continued with the pursuit.

The Camaro continued through another intersection, which was controlled by a stop sign, without stopping or slowing. At this point the vehicle was proceeding over 60 miles per hour. The officer observed two pedestrians near a crosswalk who had moved in order to avoid being hit by the Camaro.

The Camaro proceeded to evade the officer and made a left-hand turn against a red light, breaking traction in the turn. The officer then observed the Camaro make a right-hand turn. The car was sliding; it appeared to the officer as if the car had slammed on its brakes and then made the turn. The Camaro accelerated the wrong way down a one-way street. The Camaro almost hit a Chevy Luv pickup on that street. Throughout the chase, the Camaro was rapidly accelerating and then braking for the turns. The Camaro made another left turn and went through a controlled intersection without stopping. At this point the Camaro was traveling at speeds in excess of 60 miles per hour. The speed limit on the streets in that area varies from 25 to 35 miles per hour.

The Camaro attempted to make a right turn, but was going too fast for the turn, and the car slid out of control. The vehicle slid through two lanes of traffic and collided with the center divider. At that point the car appeared

disabled, and the driver crawled out of the window. The driver began running and the officer gave chase. The officer ordered appellant to stop, and that if he did not, the officer would release the dog. The driver continued to run and Officer Bianco released the dog. The driver scaled a brick wall and was apprehended by another officer. The officer identified the driver as appellant.

Officer Bianco then checked to see if any witnesses to the chase were still in the area, but they had all left. The officer did not retrace the route of the pursuit to look for skid marks. Rather, Officer Bianco went to the police station and interviewed appellant. Appellant stated that he had borrowed the Camaro from a friend, but he would not identify that person. He stated that his friend had told him not to be stopped by the police. Appellant stated that he thought the Camaro may have had a stolen license plate and that was one reason he did not want to stop. Appellant denied making any such statement at trial.

When questioned about the pursuit, appellant told the officer that he had paid attention during the chase, and that is how he avoided the collision with the Suburban. At trial, appellant denied almost hitting a Suburban. Appellant did not recall almost colliding with the pickup or the pedestrians. According to appellant there were no pedestrians on the street. Appellant also denied that there was a pickup on the one-way street, although he admitted if there had been that it would have been very dangerous.

The officer testified that the area in which the chase took place was a downtown business area with numerous businesses, people and vehicles. The pursuit took place at approximately 8:15 p.m. on a Saturday. It was light outside at that time. There was moderate traffic, both vehicular and pedestrian, on the day in question although most of the businesses were closed at that time. There were a few restaurants, bars, a theater, a convenience store, and a hospital in the vicinity of the pursuit which were open at that time. The pursuit lasted approximately one minute and sixteen seconds and measured eight-tenths of a mile. Driving the route of the pursuit in a normal fashion would take approximately five minutes.

The officer testified on cross-examination that he sounded his siren intermittently at the beginning of the pursuit, and he could not recall at what portion he sounded it continuously. In addition, he testified that appellant would break at times during the pursuit in order to make the turns.

Appellant testified on his own behalf. He stated that he took precautions during the pursuit to avoid any accidents. Appellant did not recall seeing or

almost striking a Suburban during the pursuit. Appellant also stated that he did not almost collide with a pickup. In addition, he did not nearly strike any pedestrians. He stated the officer lied about those events. Appellant testified that he never went into any skids during the pursuit, but that he did break throughout the chase. Appellant did admit to losing control of the Camaro at the end of the chase. Appellant claimed that he was driving safely throughout the pursuit although he admitted that it would be dangerous to run stop signs if there were other cars present. He stated that although he ran through the stop signs without stopping, that he checked for cross traffic, and that his actions were safe.

Appellant further claimed that the officer did not activate his siren during the pursuit; however, he indicated that it was going when he collided with the center divider. A tape of the radio transmissions during the pursuit was played for the jury. It is unclear from the tape if the siren was on throughout the chase. The officer later testified that it is common to turn off the siren during radio transmissions so that the dispatcher can hear the transmissions. The officer was unable to remember exactly at which moment he turned the siren on continuously.

James Larma, an investigator for the Kern County Public Defender's Office, also testified. He testified that he has gone to accident scenes four to five weeks after the incident and viewed skid marks. Mr. Larma went to the scene of the pursuit on September 8, 1997, to examine the intersections for skid marks. He only found one set of skid marks where appellant had collided with the center divider. However, Mr. Larma could not say that it was even likely that appellant would have left skid marks at various points throughout the chase.

## I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III.

*Appellant's Pitchess Motion Was Improperly Denied*

Appellant contends his motion for discovery under *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, was improperly denied in the present case. Appellant moved for discovery in the present case, claiming that the police report contained material misstatements and that the officer used excessive force against appellant. At the hearing on the motion, the prosecutor informed the court that she had no intention of proceeding to trial on the

*See footnote *ante,* page 410.

resisting arrest charge because it was merely a misdemeanor, and she moved to dismiss that count. The trial court granted the motion to dismiss that count, and then denied appellant's motion for discovery.

*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, which provided for the disclosure of a police officer's personnel records in certain situations, has since been codified in sections 1043 through 1045 of the Evidence Code. (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 81-84 [260 Cal.Rptr. 520, 776 P.2d 222].) Section 1043 of this code outlines the procedure for requesting such disclosure. It requires the party seeking the records to submit affidavits showing "good cause" for their discovery, setting forth the materiality of the requested documents and stating "upon reasonable belief" that the governmental agency actually has them. (Evid. Code, § 1043, subd. (b)(3); *City of Santa Cruz* v. *Municipal Court, supra,* at p. 83.) Once good cause has been established, the trial court must examine the material in camera to determine its relevance to the case according to guidelines set out in Evidence Code section 1045. "The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense." (*City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d at p. 84.) The "relatively relaxed standards" for showing good cause are offset by the protective provisions for in camera review. (*Ibid.*)

Appellant contends he made a sufficient threshold showing of good cause to justify at least an in camera examination of the arresting officers' files. We disagree. To the extent the motion was based on a claim of excessive force, the claim became irrelevant with the dismissal of the resisting arrest count. Counsel attempts to argue that a claim of excessive force is still pertinent to the issue at trial, but fails to demonstrate how a history of excessive force would have any bearing on the issue of evasion of arrest in a motor vehicle. Therefore, the motion was properly denied on that ground.

■ Appellant argues further that the motion should have been granted with respect to whether the officer has a history of misstating or fabricating facts in his police reports. We find appellant has met his burden, justifying an in camera inspection of Officer Bianco's files with respect to acts of dishonesty.

As noted above, appellant must make an initial showing that the information he is seeking is material to the case at hand. (*City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d at p. 85.) In the present case, appellant's counsel asserted in his declaration that the officer made material misstatements with respect to his observations, including fabricating appellant's

alleged dangerous driving maneuvers. He also stated that appellant asserted that he did not drive in the manner described by the report and that his driving route was different from that found in the report. In addition, he claimed that a material and substantial issue in the trial would be the character, habits, customs and credibility of the officer. These allegations were sufficient to establish a plausible factual foundation for an allegation that the officer made false accusations in his report. It demonstrated that appellant's defense would be that he did not drive in the manner suggested by the police report and therefore the charges against him were not justified.

Respondent argued at oral argument that *Pitchess* discovery motions are limited solely to issues of officer violence. Such is not the case. In *People* v. *Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446], the Supreme Court explained that the statues governing discovery motions "do not limit discovery of such records to cases involving altercation between police officer and arrestees, the context in which *Pitchess* arose." (*Memro*, *supra*, 38 Cal.3d at p. 679.) Indeed, the court also noted that "one legitimate goal of discovery is to obtain information 'for possible use to impeach or cross-examine an adverse witness . . . .' (*Foster* v. *Superior Court* (1980) 107 Cal.App.3d 218, 227 [165 Cal.Rptr. 701].)" (*Id.* at p. 677.) Likewise, other cases have held that *Pitchess* motions are proper for issues relating to credibility. (See *Larry E.* v. *Superior Court* (1987) 194 Cal.App.3d 25, 28-33 [239 Cal.Rptr. 264] [motion seeking discovery of complaints for "aggressive behavior, violence or excessive force, improper police tactics, dishonesty and racial or class prejudice" sufficient to require in camera review when minor alleged that he did not use force against the officers, that the officers lied about his actions and planted evidence, and the information was relevant to show officers had a motive to lie and could show potential bias which would affect the officers' credibility as witnesses]; *Pierre C.* v. *Superior Court* (1984) 159 Cal.App.3d 1120, 1122-1123 [206 Cal.Rptr. 82] [discovery motion for records pertaining to " 'racial prejudice, false arrest, illegal search and seizure, the fabrication of charges and/or evidence, dishonesty and improper tactics . . . .' " sufficient, because the minor alleged a defense of false arrest and alleged that a substantial issue at trial "would be the character, habits, customs and credibility of the officers."].)

Appellant also demonstrated a reasonable belief that the agency had the type of information he was seeking. Appellant's counsel's declaration stated: "I am informed and believe that on occasion arrestees, or the attorneys, friends, or relatives of such arrestees, make complaints to said agency concerning its law enforcement officers. These complaints allege that the officers committed acts of . . . dishonesty." It went on to state: "The material sought may contain complaints of a like nature made by other

citizens against the aforementioned Bakersfield Police Department officer(s)."

In *City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d 74, the California Supreme Court explained that a reasonable belief may be· "premised upon a rational inference from known or reasonably assumed facts." (*Id.* at p. 90.) In that case the defendant sought discovery of officer personnel files for information relating to claims of excessive force. The court concluded that "[c]ounsel's statement of 'belief' that the City 'may' have other complaints of excessive force" was sufficient to support a rational inference that the officers may have been accused of using excessive force in the past. (*Id.* at p. 93.) This was so because the police reports demonstrated considerable force was used in arresting the defendant, and defense counsel's affidavit claimed use of excessive force after the defendant was subdued. (*Ibid.*) Likewise in the present case, the police report indicated that appellant drove in a dangerous manner; however, appellant's counsel's declaration asserted that defendant did not drive in the manner suggested in the report, which led to a reasonable inference that the officer may not have been truthful. Therefore, it becomes relevant whether the officers have been accused of falsifying reports in the past. We find appellant demonstrated good cause for the requested discovery and the trial court abused its discretion by failing to hold an in camera hearing.

■    Finding the trial court erred in failing to provide an in camera review does not end the analysis; appellant must also demonstrate he was prejudiced from the denial of discovery. (*People* v. *Memro, supra,* 38 Cal.3d at p. 684.) We are unable to conclude that there is a reasonable probability that the discovery sought in this case would have led to admissible evidence helpful to appellant in his defense. (*People* v. *Gill* (1997) 60 Cal.App.4th 743, 750-751 [70 Cal.Rptr.2d 369].) There may not have been any complaints against Officer Bianco for the type of conduct appellant sought. In that case, appellant would not have been prejudiced because access to the officer's file would not have led to any admissible evidence at trial. However, we must consider the possibility that such evidence may exist.

Therefore, a special disposition is required in this case. In *People* v. *Gill, supra,* 60 Cal.App.4th 743, the court was faced with an identical situation. There the trial court had denied the defendant's discovery request, and on appeal from a judgment of conviction, the appellate court found that the defendant had made the requisite showing of good cause, entitling him to an in camera review of the officer's file. (*Id.* at p. 750.) The court found the proper disposition would be to remand the case to the trial court to conduct an in camera hearing on the discovery motion. If the hearing resulted in no

discoverable information, the judgment was ordered affirmed. If the hearing resulted in discoverable information, the trial court was ordered to grant the discovery and order a new trial. (*Id.* at p. 751.)

We agree with *Gill* in part. Here we cannot say that there was any discoverable information in Officer Bianco's file. Therefore, we will remand the case to the trial court to conduct an in camera hearing on the discovery motion. If there is no discoverable information in the file, then the trial court is ordered to reinstate the original judgment and sentence, and the judgment is ordered affirmed. (*People* v. *Gill, supra,* 60 Cal.App.4th at p. 751.) If, however, there is relevant discoverable information in the officer's file, we disagree with *Gill*'s conclusion that a new trial is necessarily required. Instead, appellant should be given an opportunity to determine if the information would have led to any relevant, admissible evidence that he could have presented at trial. (See *People* v. *Memro, supra,* 38 Cal.3d at p. 684 ["It is settled that an accused must demonstrate that prejudice resulted from a trial court's error in denying discovery."].) If appellant is able to demonstrate that he was prejudiced by the denial of the discovery, the trial court should order a new trial. If appellant is unable to show any prejudice, then the conviction is ordered reinstated, and the judgment is ordered affirmed.

Such a disposition is not unheard of in California cases. In *People* v. *Coyer* (1983) 142 Cal.App.3d 839 [191 Cal.Rptr. 376], the court ordered a similar disposition. The defendant in that case had sought pretrial discovery of any charges currently pending against any witness the prosecution intended to call. The trial court denied the request and the defendant was convicted at trial. (*Id.* at pp. 841-842.) The appellate court held that the trial court abused its discretion in denying the discovery request. (*Id.* at p. 843.) In considering the proper disposition in that case, the court stated:

"We must now consider the implications of the improper restriction of discovery. Contrary to appellant's assertions, there is no rule in California that improper denial of discovery by the court or noncompliance by the prosecution is reversible error, per se. It is still incumbent upon a defendant to show that prejudice has flowed from the error. (See *People* v. *Sewell* (1978) 20 Cal.3d 639, 646 [143 Cal.Rptr. 879, 574 P.2d 1231]; *People* v. *La Salle* (1980) 103 Cal.App.3d 139, 153-154 [162 Cal.Rptr. 816].) It is true that, on this record, application of traditional harmless error analysis would be 'speculative' as we do not know whether compliance with the defendant's request would have revealed any pending charges. Nonetheless, a remedy exists. No material evidence has been destroyed. The information originally sought by appellant is still available to the prosecuting authorities. (Compare *People* v. *Zamora* [(1980)] 28 Cal.3d 88 [167 Cal.Rptr. 573, 615 P.2d

1361].) In *Com.* v. *Slaughter* (1978) 482 Pa. 538 [394 A.2d 453], the Supreme Court of Pennsylvania confronted an almost identical problem. There the trial court had committed error under *Davis* v. *Alaska* [(1974)] 415 U.S. 308 [94 S.Ct. 1105, 39 L.Ed.2d 347], in denying defense counsel access to the juvenile records (if any) of a witness. Rather than reverse outright, *Slaughter* ordered the following disposition: '(The record does not even indicate whether or not Ragland, in fact, had a record of juvenile offenses, let alone whether that record, if it exists, would support appellant's claim of bias.) We therefore remand the matter to the trial court with instructions that appellant, through his counsel, be given access to Ragland's juvenile record. Counsel will then be able to argue to the trial court what, if any, use could have been made of that record had he been allowed to use it to cross-examine Ragland. If, in the court's opinion, its original refusal to allow defense counsel to cross-examine Ragland on the basis of this juvenile record prevented appellant from presenting to the jury evidence regarding Ragland's possible bias; or other information which would bring the case within the requirements of *Davis, supra*, it shall vacate the judgment of sentence and order a new trial. If, on the other hand, Ragland has no juvenile record, or if in the court's opinion, appellant has failed to assert any facts which would bring the case within the rationale of *Davis, supra*, it shall affirm its original order. Either party may then file an appropriate appeal.' (*Com.* v. *Slaughter, supra*, 482 Pa. 538 [394 A.2d 453, 460.)

"No California court has ordered a remand of this sort for discovery error; however, such a disposition is not unknown in criminal appeals involving other forms of error. In *People* v. *Minor* (1980) 104 Cal.App.3d 194 [163 Cal.Rptr. 501], this court found error under *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], in the trial court's failure to inquire into a defendant's reasons for requesting the appointment of different counsel. As the trial record itself was free of error, it was appropriate to tailor the disposition to the specific pretrial error committed. 'In its disposition of a criminal case the appellate court is not limited to the more common options of affirmance, reversal or modification of the judgment or order appealed from. The court "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances." (Pen. Code, § 1260). . . . But when the trial is free of prejudicial error and the appeal prevails on a challenge which establishes only the existence of an unresolved question which may or may not vitiate the judgment, appellate courts have, in several instances, directed the trial court to take evidence, resolve the pending question, and take further proceedings giving effect to the determination thus made.' (*People* v. *Minor, supra*, 104 Cal.App.3d 194, 199; see also *People* v. *Vanbuskirk* (1976) 61 Cal.App.3d 395, 405-407 [132 Cal.Rptr. 30] [remand for evidentiary hearing on fairness of pretrial identification procedures]." (142 Cal.App.3d at pp. 844-845.)

While we are cognizant of the fact that the Supreme Court in *Memro* declined to follow the disposition set out in *Coyer*, we feel that this case is distinguishable. *Memro* found that the defendant was prejudiced by the trial court's denial of his discovery motion because there was a reasonable probability that the "discovery would have led to admissible evidence of sufficient weight to affect the trial court's determination on the voluntariness of the confession." (*People* v. *Memro, supra,* 38 Cal.3d at p. 685.) In distinguishing *Coyer*, the court found that *Coyer* involved neither "*Pitchess* discovery nor discovery relevant to both the admissibility and weight of a confession." (*Ibid.*; but see *id.*, conc. and dis. opn. of Grodin, J., at pp. 707-710 [arguing a disposition similar to that found in *Coyer* was appropriate in that case].) However, as we mentioned above, *Coyer* dealt with the denial of a discovery request relating to any pending charges against the prosecution's witnesses. Therefore, *Coyer*, like the present case, dealt with the denial of the discovery of potential impeaching information. Consequently, we find *Coyer* instructive.

To provide the trial court with some guidance on the issue should there be some discoverable information in Officer Bianco's file, we will set out the standard the trial court should use in determining prejudice. In *People* v. *Memro, supra,* 38 Cal.3d 658, the Supreme Court was called on to decide whether the error in failing to grant the defendant's *Pitchess* motion was prejudicial. The court stated that under the facts of that case, "it is reasonably probable that discovery would have led to admissible evidence of sufficient weight to affect the trial court's determination on the voluntariness of the confession." It would appear, therefore, that the court was suggesting a proper standard for prejudice in such a case is that utilized under *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

More recently, in *People* v. *Marshall* (1996) 13 Cal.4th 799 [55 Cal.Rptr.2d 347, 919 P.2d 1280], the California Supreme Court was confronted with a similar situation. There, the trial court denied the defendant's request to discover a witness's Department of Corrections records. The witness testified that the defendant had confessed his crime to him while in custody. The defendant argued he needed the witness's records in order to impeach the witness's credibility because he had some information that the witness had spent some time in a mental hospital. The Supreme Court concluded that there was "no reasonable probability the outcome of this case would have been different had [the information] been disclosed to the defense. [Citation.] For the same reason, we are unpersuaded defendant suffered prejudice as required by *People* v. *Memro, supra,* 38 Cal.3d at page 684, where the denial of *Pitchess* discovery [citation] 'deprived [the defendant] of the possibility of presenting evidence' on the issue whether his

confession was voluntary beyond a reasonable doubt." (*Id.* at pp. 842-843, fn. omitted.)

It is apparent from this holding that the proper standard of analysis regarding whether a defendant was prejudiced from the denial of a discovery motion is to determine if there was a reasonable probability that the outcome of the case would have been different had the information been disclosed to the defense. Indeed, we find no difference between this case and those cases where the trial court erroneously excluded admissible evidence. When the trial court excludes relevant, admissible evidence over the defendant's objection, the proper standard of review is whether there is a reasonable probability that there would have been a different result had the evidence been admitted. (*People* v. *Humphrey* (1996) 13 Cal.4th 1073, 1089 [56 Cal.Rptr.2d 142, 921 P.2d 1]; *People* v. *Fudge* (1994) 7 Cal.4th 1075, 1102-1103 [31 Cal.Rptr.2d 321, 875 P.2d 36]; *People* v. *Cudjo* (1993) 6 Cal.4th 585, 611 [25 Cal.Rptr.2d 390, 863 P.2d 635].)

In *Fudge* the California Supreme Court addressed whether the trial court's exclusion of evidence as hearsay rose to the level of constitutional error. The defendant in *Fudge* was convicted of five counts of first degree murder. (*People* v. *Fudge, supra,* 7 Cal.4th at p. 1087.) Part of the prosecution's evidence consisted of testimony from other inmates claiming that the defendant had confessed his crimes to them. The defendant attempted to introduce evidence that would tend to show that the witnesses fabricated what he allegedly told them after gathering or being supplied with information regarding his crime. (*Id.* at pp. 1101-1102.) In deciding whether the defendant suffered any prejudice from the exclusion of this evidence, the court stated: "As a general matter, the '[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense.' [Citations.] Although completely excluding evidence of an accused's defense theoretically could rise to this level, excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense. [Citation.] If the trial court misstepped, '[t]he trial court's ruling was an error of law merely; there was no refusal to allow [defendant] to present a defense, but only a rejection of some evidence concerning the defense.' [Citation.] Accordingly, the proper standard of review is that announced in *People* v. *Watson,* [*supra,*] 46 Cal.2d [at p.] 836 . . . , and not the stricter beyond-a-reasonable-doubt standard reserved for errors of constitutional dimension (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065])." (*Fudge, supra,* 7 Cal.4th at pp. 1102-1103.)

We find the present case analogous to *Fudge.* On remand, the appellant will have an opportunity to determine if he would have been able to present

any additional evidence at trial as a result of any discoverable information. If appellant presents the court with relevant, admissible information, he would be in the same position as if he had presented that information at trial and the trial court had excluded it. Therefore, the trial court can determine whether there is a reasonable probability that had the evidence been admitted a different result would have been obtained at trial. If the evidence is such that there is a reasonable probability that there would have been a different outcome, then the trial court shall order a new trial. If there is no reasonable probability of a different outcome given the newly discovered information, then appellant has demonstrated no prejudice, and the judgment is ordered reinstated and affirmed.

## IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

For the reasons stated, the judgment is reversed and the cause is remanded with directions to the trial court to conduct an in camera hearing on appellant's discovery motion consistent with this opinion. If the hearing reveals no discoverable information in Officer Bianco's personnel file which would lead to admissible evidence helpful to appellant's defense, the trial court shall reinstate the original judgment and sentence which shall stand affirmed. If the in camera hearing reveals discoverable information bearing on the officer's honesty which could lead to admissible evidence helpful to appellant in defense of the charge, the trial court shall grant the requested discovery, allow appellant an opportunity to demonstrate prejudice, and order a new trial if prejudice is demonstrated.

Wiseman, J., and Levy, J., concurred.

---

*See footnote, *ante*, page 410.