Filed 7/28/15  P. v. Stevenson CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DOUGLAS J. STEVENSON,<br><br>    Defendant and Appellant. | F068170<br><br>(Super. Ct. No. MF010467)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Cory J. Woodward, Judge.

Laurie Wilmore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Douglas J. Stevenson appeals a conviction from his plea of nolo contendere to battery on a correctional officer.  Stevenson contends the trial court improperly denied his

suppression motion. Additionally, he argues the court erred in refusing to view evidence of his own injury during the incident and refusing to permit cross-examination of the correctional officer about prior complaints. Stevenson further contends his plea was not voluntary and seeks appellate review of the correctional officer's personnel records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

We find merit in Stevenson's contentions that the trial court improperly limited *Pitchess* discovery and presentation of evidence at the suppression hearing. We conditionally reverse the judgment and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Preliminary Hearing and Information*

The preliminary hearing was conducted on April 19, 2013. Correctional Officer Mark Crotty testified he was working at the California Correctional Institution at Tehachapi the morning of December 7, 2012. Crotty was assigned to the secure housing unit (SHU), transporting inmates to the showers. Crotty was transporting Stevenson from the shower back to his cell. As they crossed in front of cell A section 105, the inmates in that cell had placed a book for Stevenson to grab. When Stevenson asked Crotty if he could take the book, Crotty said "no." As they continued toward his cell, Stevenson became agitated and "shoulder checked" Crotty with his right shoulder, hitting Crotty's left side. This started an altercation.

Stevenson was in handcuffs with his hands behind his back. Stevenson's shoulder checking pushed Crotty off balance. Crotty ordered Stevenson to get down, but Stevenson refused to comply. Crotty struck Stevenson twice in the upper right thigh with his baton. Stevenson still refused to comply with the order to get down. Crotty grabbed Stevenson's right biceps and took him to the floor.

Both Crotty and Stevenson fell to the floor on their stomachs. Stevenson rolled over onto his back and kicked Crotty, striking Crotty on his right hand. As Stevenson continued kicking, Crotty's partner, Chris Gonzales, came over. Crotty suffered

2.

"overwhelming" pain in his hand, which began swelling after the incident. Stevenson did not stop kicking until Gonzales administered four more strikes with his baton and other prison staff arrived. Because of their positions relative to each other, Crotty did not believe it was possible he had hit Stevenson's left thigh.

Crotty showed his hand to his supervisor, Sergeant Foster, and was sent first to the prison infirmary and then to the hospital. Crotty described the swelling as causing his hand to look like a watermelon and the pain he suffered as "unreal." Crotty could not bend his fingers; he wore a hand splint for over two months.

Crotty had prior contact with Stevenson because he was assigned to the building Crotty worked. Crotty had not used force on Stevenson prior to this incident. Stevenson had been sprayed with pepper spray by another officer the month before. Crotty had been present as another escorting officer, but he did not administer the pepper spray.

Crotty did not write his report of the incident. The report was written by a sergeant who questioned Crotty by telephone while Crotty was at the hospital. Having reviewed the report, Crotty did not think there was anything that needed to be added, changed, or deleted.

On cross-examination, Crotty explained he hit Stevenson's right thigh with the baton, holding it in his right hand. Stevenson was standing in front of Crotty and they were both facing the same direction when the altercation began.

On April 23, 2013, an information was filed alleging Stevenson committed battery on Mark Crotty, a correctional officer (Pen. Code,[1] § 4501.5), and caused great bodily injury in doing so (§ 12022.7, subd. (a)). It was further alleged Stevenson had a prior serious felony conviction within the meaning of the three strikes law (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e).) The information also alleged Stevenson was eligible for a prior prison term enhancement (§ 667.5, subd. (b)).

---

[1]Unless otherwise designated, further statutory references are to the Penal Code.

*Defendant's* **Pitchess** *Motion*

On June 3, 2013, Stevenson's counsel filed a *Pitchess* motion for discovery of information in Crotty's files seeking, among other things, past incidents of excessive or unnecessary force, failure to appropriately manage anger, instances of retaliation or racial prejudice, evidence of filing an improper worker's compensation claim, and dishonesty. Stevenson's counsel prepared a declaration on information and belief stating his client asserted he never battered Crotty and all assertions to the contrary were false.

Stevenson believed he was the victim of Crotty's retaliation because Crotty was fed up with Stevenson's requests for a spoon that was not broken. While escorting Stevenson to the showers in an area out of view by other inmates, Crotty pushed Stevenson against a wall and beat him unnecessarily, excessively, and violently. Stevenson had previously suffered a gunshot wound to his left leg. It resulted in scarring that would be obvious to Crotty at the time because Stevenson was being escorted in minimal clothing.

Crotty had previously seen Stevenson's unusual gait during an interaction on November 11, 2012, when two other officers pepper sprayed Stevenson and his cellmate, Mr. Bell. Bell was a member of a Black gang. Because Stevenson volunteered to share a cell with Bell, Crotty incorrectly suspected Stevenson of also being involved with a Black gang. Although Crotty did not pepper spray Stevenson during this incident, he offered his can of pepper spray to the other officers. Crotty was part of a team of officers who approached Stevenson and challenged Stevenson to assault them, but Stevenson refused. Stevenson is Black and Crotty is White.

Stevenson maintained Crotty had developed a history with him, and when Stevenson asked for an unbroken spoon, Crotty attacked him and then lied about it in his offense report and to his physician. Despite one hospital's conclusion there was no evidence Crotty suffered a fracture, dislocation, or subluxation, Crotty continued for months with time off from work collecting disability and pursuing a contrived worker's

4.

compensation claim. Stevenson was housed in a cell nearby Crotty and Sergeant Foster and overheard Foster indicating his frustration with Crotty because of the prior pepper spray incident.

Foster asked Crotty what he could charge Stevenson with and Crotty replied he did not "'give a fuck; charge him with something.'" Crotty then punched a nearby locker, injuring his right hand. Crotty had sought medical treatment for his right fourth metacarpal, or ring finger, and Foster noted Crotty injured his right index finger. On July 11, 2013, the trial court granted Stevenson's *Pitchess* motion and conducted an in camera review of Crotty's personnel file.

### In Camera Review of Crotty's Personnel File

The trial court found there was no discoverable information in Crotty's personnel file. After conducting our own review of the file, we conclude that though the information is limited, Stevenson is entitled to information related to an allegation in 2006. Stevenson is further entitled to discovery of an event that occurred on September 7, 2009, and resulted in a subsequent investigation into that event, which concluded in October 2009.

### Suppression Motion

On June 11, 2013, Stevenson's counsel filed a motion to suppress evidence pursuant to section 1538.5. Stevenson specifically alleged he did not try to move away from Crotty until after Crotty began to apply his baton on Stevenson and his detention and arrest were, therefore, illegal. The suppression hearing was conducted on August 12 and 13, 2013. Crotty was the only witness.

Crotty testified he had been a correctional officer for 10 years and was assigned as a search and escort officer at the California Correctional Institution at Tehachapi on December 7, 2012. Crotty was working in the SHU. Prior to taking inmates to the shower, Crotty goes to a cell, cuffs the inmate, and brings him to the showers where the inmate is allotted 10 minutes to shower. Crotty then retrieves the inmate and brings him

back to his cell. Crotty followed this procedure with Stevenson just before 6:40 a.m. Crotty retrieved Stevenson from the shower, cuffing him at the cuff port at the shower, opening the controlled door by lifting his hand, and exiting. Stevenson's hands were handcuffed.

Crotty escorted Stevenson alone, holding Stevenson by his right biceps. As they passed cell 105, two inmates told Stevenson to retrieve a book on the floor. Stevenson asked if he could retrieve it and Crotty told him no. As the escort continued, Stevenson became agitated, his muscles began to tense, and he was grunting. Stevenson lunged and used his right shoulder to hit and push off Crotty.

Crotty lost his balance. Crotty lost his grip on Stevenson's shoulder when he stepped away. Crotty backed off one step from Stevenson and told Stevenson to get down. Stevenson was standing as if he was going to head out toward the stairs. When Stevenson failed to respond to the command, Crotty took one swing to Stevenson's upper right thigh with his baton and ordered Stevenson to the floor again. Crotty struck Stevenson a second time on the upper right thigh when he again failed to get down.

Stevenson continued to turn himself to the point of facing Crotty. Crotty grabbed Stevenson's biceps and they both fell to the floor face first, side-by-side of each other. When Crotty pushed off, Stevenson was flipping over to his right toward Crotty and he started bicycling with his legs and struck Crotty in the hand.

On cross-examination, Crotty elaborated that he broke his fall with his right hand, the hand in which he was holding his baton. Crotty landed on the hand and weighs 210 pounds, but felt no pain in his hand. Crotty stated he felt no pain in his hand until after Stevenson kicked it with his bicycle kicks. Crotty was still holding his baton when he got back up on his feet. Crotty did not strike Stevenson while Stevenson was on his back. Crotty's partner, Officer Gonzales, arrived while Stevenson was still on the floor doing his bicycle kicks. Gonzales was in front of Crotty, partially blocking his view. Crotty

could see Gonzales strike Stevenson four times with his baton, but could not see if Gonzales struck Stevenson's left or right leg or the exact location of Gonzales's blows.

Crotty testified he had never been disciplined for using excessive force and had not been counseled for use of excessive force. When Crotty was asked whether he had been given notice of adverse action or was the subject of "602 complaints,"[2] the trial court sustained the prosecutor's objections to these questions as having been asked and answered, even though they were different questions than whether he had been disciplined for using excessive force.

On November 11, 2012, Crotty had conducted an unclothed body search of Stevenson. He was not looking for injuries or scars and did not notice a gross disfigurement on Stevenson's upper left leg. The court twice denied Stevenson's motion to actually view Stevenson's upper thigh, which Stevenson's counsel argued that Crotty hit because Stevenson had a prior serious injury to that leg and Crotty abusively took advantage of the injury. Crotty stated he was unaware of large injuries on Stevenson's upper left thigh. The court granted a defense motion to admit into evidence a grainy black-and-white photograph depicting Stevenson wearing boxer shorts the day of the incident.

The trial court acknowledged Stevenson was raising an issue of credibility on the issue of actually viewing Stevenson's leg, but found Stevenson's counsel was essentially asking it to conclude Crotty's testimony was so unbelievable that any application of force by Crotty was unwarranted. Defense counsel explained the court did not have to make "that much of a jump," but the evidence of a prior injury on Stevenson's leg would shed light on Crotty's credibility.

Stevenson's counsel argued that even if his client bumped Crotty with his shoulder, the amount of force used by Stevenson was very small and Crotty's response

---

[2]A Department of Corrections and Rehabilitation Form 602 is used by an inmate to initiate the administrative appeal process. (Cal. Code Regs., tit. 15, § 3084.2.)

was disproportionate to the situation. Counsel argued the amount of force employed on his client was so great that Stevenson's arrest constituted an illegal seizure and should be suppressed. The trial court denied Stevenson's suppression motion.

**Faretta** *and Change of Plea Hearings*

After conducting a hearing on August 19, 2013, the trial court granted Stevenson's motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806.

On August 20, 2013, Stevenson complained to the trial court that everything was against him. Stevenson told the court he had to go back to the same prison, he had to face the same people there, his television was cracked when he went back to the prison, and only guards can get hurt, not inmates. The court asked Stevenson if he wanted to enter a plea. Stevenson replied affirmatively. The court again asked Stevenson if he wanted to go to trial, but Stevenson said he would just plead no contest. When asked by the court why he wanted to enter a plea, Stevenson replied he was doing it for protection in the facility and he was hoping that doing so would be in his best interests.

Stevenson told the court he believed he would be subject to a physical assault again if he did not enter a plea because he was not in the general prison population and had to be handcuffed everywhere he went. Stevenson conceded no one was forcing him to enter a plea and no one was twisting his hand. Stevenson was not under the influence of alcohol. When the trial court pointed out he could go to trial and never be subject to an assault by a peace officer, Stevenson acknowledged this but said he wanted to plead no contest and had full confidence in the court being fair to him. The prosecutor told the court Stevenson had approached her a few minutes earlier and she indicated to him a plea bargain offer remained open until the trial started. The court gave Stevenson time to review the felony advisement of rights, waiver, and plea form.

Under the terms of the plea agreement, Stevenson would plead no contest to a violation of section 4501.5 and admit a prior serious felony conviction. In exchange for his plea, Stevenson would receive a stipulated sentence of two years, doubled pursuant to

the three strikes law, and the remaining allegations would be dismissed. Stevenson executed and initialed the felony advisement of rights, waiver, and plea form setting forth the terms of the plea agreement. The form also advised Stevenson of the consequences of his plea and explained Stevenson's constitutional rights pursuant to *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122.

The court verified Stevenson initialed and signed the plea form and understood the rights he was waiving, especially the right to a trial. The court determined Stevenson understood he would have to serve 85 percent of the four years he would be serving and wanted to waive his right to a trial. Stevenson pled no contest to a violation of section 4501.5 and admitted a prior serious felony conviction within the meaning of the three strikes law.

The sentencing hearing was on September 19, 2013. Stevenson complained he did not have the opportunity to subpoena witnesses who were in other prisons, and prison authorities had brought the wrong witnesses to court just before he entered his plea. The prosecutor confirmed that prior to the court granting Stevenson's motion to represent himself, his trial attorney told the prosecutor the wrong witnesses had been brought to the court. Stevenson told the court his original release date was set for December 14, 2013. Stevenson asked the court why he would try to retrieve a book and provoke an incident with Crotty so close to his release date. The court noted Stevenson could not have it both ways. He could not say the allegations were unfair because the incident never happened and then enter a plea when he had the opportunity for a trial.

The trial court sentenced Stevenson according to the terms of the plea agreement: a prison term of two years, doubled pursuant to the three strikes law to four years. Stevenson filed a timely notice of appeal and obtained a certificate of probable cause from the trial court.

*Pending Motions on Appeal*

Stevenson's appellate counsel has filed two motions in the instant appeal in which this court deferred ruling pending consideration of the appeal on its merits. On April 10, 2014, this court deferred ruling on Stevenson's request to expand his appellate counsel's appointment to include the pursuit of a petition for habeas corpus to have Stevenson's polygraph taken and to investigate lawsuits filed in federal district court against Crotty alleging Crotty violated the civil rights of the inmates at Tehachapi who filed the lawsuits. Stevenson's counsel further seeks to investigate an allegation by Stevenson's former counsel that Crotty called trial counsel an expletive. On April 10, 2014, and on June 25, 2014, this court deferred ruling on requests for judicial notice of two civil rights actions filed against Crotty in federal district court alleging he used excessive force on the inmates and a federal bankruptcy petition filed by Crotty that refers to the lawsuits.

## DISCUSSION

**1.      Discovery and Evidentiary Issues**

Stevenson raises multiple issues on appeal related to discovery. He challenges the trial court's rulings denying his request to have the trial court view the scarring injury to his left leg and preventing defense counsel from asking Crotty about prior allegations of using excessive force. Stevenson also requests this court review the relevant materials produced for the *Pitchess* motion he filed. As a preliminary matter, we note Stevenson has obtained a certificate of probable cause and can, therefore, raise issues that go behind his plea. (*People v. Panizzon* (1996) 13 Cal.4th 68.) Also, Stevenson can challenge alleged errors in the suppression motion without a certificate of probable cause. (*Ibid.*; § 1237.5; *People v. Mendez* (1999) 19 Cal.4th 1084, 1096.) As we explain, there is merit to Stevenson's assertion the trial court erred at the suppression hearing in preventing Stevenson's counsel from questioning Crotty concerning matters constituting admissible and relevant evidence.

10.

***Excluded Evidence***

The suppression motion filed by Stevenson's counsel alleged Stevenson was illegally arrested because Crotty used excessive force far outside the force necessary to control him even if he did bump Crotty's shoulder with his own shoulder. The United States Supreme Court has recognized that whether the seizure of a person is reasonable under the Fourth Amendment can include an evaluation of whether the force employed in the seizure or arrest was reasonable. Courts employ an objective standard in determining whether excessive force was employed by the officer. (*Graham v. Connor* (1989) 490 U.S. 386, 395-397.)

Stevenson further contended Crotty's version of events was untrue and Crotty took him out of view and intentionally hit him in the left leg. Stevenson argued he still suffered pain in that leg from a former gunshot wound that caused significant scarring and the wound was obvious to anyone who viewed his leg. To corroborate his version of events, Stevenson sought to have the court view his leg. Stevenson's counsel further sought to question Crotty concerning past allegations by other inmates that he had so-called 602 complaints from other inmates, adverse action, had to engage in special training after applying excessive force, or complaints from private citizens for the use of excessive force. The trial court sustained objections by the prosecutor to these questions on the ground the questions had been asked and answered.

The questions Stevenson's counsel attempted to ask concerning complaints by other inmates or from private citizens for the use of excessive force were not answered by Crotty's previous testimony that he had not been disciplined by prison authorities for using excessive force. The additional questions are related to, but different from, whether Crotty had been disciplined for prior use of excessive force. If Crotty engaged in prior acts of excessive force, whether or not he was disciplined for them, this was relevant to Crotty's motive, intent, knowledge, or absence of mistake or accident concerning his encounter with Stevenson. (Evid. Code, § 1101, subd. (b).)

11.

Although the character of a witness may not be attacked by specific evidence of wrongful acts, this general rule is not controlling where the inquiry goes beyond character and involves a basic fact in issue. (Evid. Code, § 1101, subds. (a), (b).) Four prior episodes of an officer's misconduct in bullying and assaulting other suspects in custody during a booking incident are relevant under Evidence Code section 1101, subdivision (b) and have been held to be relevant to prove both intent and the absence of mistake or accident. (*Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938, 945.)

Evidence contradicting the testimony of a witness, even if it consists of proof of other wrongful acts, is proper if it is relevant to an issue presented in a case. (*People v. Clark* (1965) 63 Cal.2d 503, 505.) Also, otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with habit or custom. (*Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 983.)

The court also refused to view Stevenson's scarred left leg. There were grainy black-and-white photographs available of both Stevenson's leg and the injuries Crotty received to his hand. Although the court did not necessarily have to personally examine Stevenson's leg, the parties could have arranged for accurate photographs to be taken depicting the scarring and extent of Stevenson's prior injury to the leg. As with evidence concerning past allegations of excessive force by Crotty, the prior injury Stevenson asserted Crotty exploited during their encounter was a material issue before the trial court in the suppression hearing. It was error for the trial court to limit defense counsel's presentation of these matters during the suppression hearing.

**Pitchess *Ruling***

The parties agree we need to independently review Officer Crotty's personnel file to determine whether there is information relevant to past allegations he employed excessive force or was dishonest. There are two such incidents in Crotty's file, one from 2006 and one on September 7, 2009 (investigation concluded in October 2009).

12.

Because Crotty's veracity lies at the heart of Stevenson's suppression motion, the officer's credibility is at issue. Discovery of such information, as contained in the incident pertaining to the September 7 and October 2009 dates, is not limited to cases involving altercations between law enforcement officers and arrestees. (*People v. Memro* (1985) 38 Cal.3d 658, 679, overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; *People v. Hustead* (1999) 74 Cal.App.4th 410, 417.) A legitimate goal of discovery is to obtain information for possible use to impeach or cross-examine an adverse witness. (*Hustead*, *supra*, at p. 417; see *People v. Gill* (1997) 60 Cal.App.4th 743, 750-751.)

A defendant who has established error in denying *Pitchess* discovery must also demonstrate a reasonable probability of a different outcome had the evidence been disclosed. (*People v. Gaines*, *supra*, 46 Cal.4th at pp. 182-183.) In the instant action, however, we cannot easily evaluate the effect of limiting the discovery in question on defendant's decision to plead no contest rather than to proceed to trial.

Also, although Evidence Code section 1045, subdivision (b)(1) excludes material more than five years old, the 2006 incident is still discoverable because the statutory time limitation is not a bar to disclosure. California's discovery scheme entitles a defendant to information that can facilitate the ascertainment of facts at trial, that is, all information pertinent to the accused's defense. (*City of Los Angeles v. Superior Court* (*Brandon*) (2002) 29 Cal.4th 1, 13-17.) Pertinent information may include discovery of peace officer records related to events that occurred after the original conviction where, as in this case, "a defendant obtains a new trial by way of appellate or habeas relief …." (*Blumberg v. Superior Court* (2011) 197 Cal.App.4th 1245, 1247.)

The trial court should have disclosed the available information to defense counsel.

**Evaluating Prejudice**

The People contend our evaluation of prejudice to defendant of the trial court's evidentiary rulings is subject to deferential appellate review pursuant to *People v. Watson*

13.

(1956) 46 Cal.2d 818, 836. We disagree. The evidentiary errors in the trial court's rulings set forth above go to the heart of defendant's suppression motion and to his ability to question the officer's credibility. Another matter we confront is the fact that Stevenson's trial counsel, and later Stevenson representing himself, did not have all of the information available in determining whether to proceed to trial. We cannot evaluate the impact of the evidentiary rulings on Stevenson's decision to enter a no contest plea. The trial court's limitation of counsel's questioning of Crotty may well have influenced Stevenson's decision to represent himself.

This problem is compounded by the trial court's *Pitchess* ruling limiting discovery of information that was discoverable by defense counsel. Finally, it is disturbing that Stevenson told the court at sentencing that inmates his counsel had subpoenaed did not show up for a hearing because prison authorities sent the wrong inmates. The prosecutor corroborated Stevenson on this point, explaining to the court that defense counsel informed her the wrong inmates had been sent by the prison to the hearing.

The cumulative effect of these errors undermines our confidence that the trial court had all the relevant evidence before it when it denied the suppression motion. As also noted, the cumulative effect of these errors makes it very difficult to evaluate whether Stevenson would have chosen to represent himself or to enter a no contest plea rather than proceed to trial. (See *People v. Hill* (1998) 17 Cal.4th 800, 844-848; *People v. Hamilton* (1963) 60 Cal.2d 105, 137-138, overruled on other grounds in *People v. Morse* (1964) 60 Cal.2d 631, 648-649, disapproved on other grounds in *People v. Daniels* (1991) 52 Cal.3d 815, 864-866.)

Under the circumstances of this case, Stevenson's due process rights have been affected. Not only were Stevenson's discovery rights affected, but his constitutional rights of cross-examination, to confront witnesses, and to subpoena witnesses for his defense were improperly limited. We therefore measure the prejudice pursuant to the standard set forth in *Chapman v. California* (1967) 386 U.S. 18. Under the *Chapman*

standard, we cannot say beyond a reasonable doubt the result of these proceedings would have been the same in absence of the errors.

There is no way for this court to foresee whether Stevenson's discovery efforts, or his attempt to impeach Officer Crotty should he decide to renew his suppression motion, will substantially change the evaluation of Stevenson's defense. Under similar circumstances, this court has employed a conditional remand to permit further *Pitchess* discovery, allow the defendant the opportunity to demonstrate prejudice, and order a new trial if prejudice is demonstrated. (*People v. Hustead, supra*, 74 Cal.App.4th at pp. 421-423; see *People v. Gill, supra*, 60 Cal.App.4th at pp. 750-751.)

We will remand the case for the trial court to permit discovery of the *Pitchess* information noted above and for defendant to evaluate whether he wants to renew his suppression motion and thereafter withdraw his plea and proceed to trial.

### Pending Motions

Stevenson's appellate counsel has filed two motions in which rulings were deferred pending review of the merits of the appeal. In the first, Stevenson's appellate counsel seeks expansion of her appointment to include review of habeas corpus issues, including the preparation of a polygraph of Stevenson. Counsel also seeks to pursue other evidentiary matters outside the scope of the current record. The second request is for this court to take judicial notice of claims filed in federal district court that Crotty allegedly violated the civil rights of two other inmates at Tehachapi and to further judicially notice a bankruptcy action by Crotty in which these cases are listed as liabilities.

We deny the request of Stevenson's appellate counsel to expand her appointment to include a habeas corpus petition based on a future polygraph of defendant. Polygraph evidence is not admissible absent a stipulation by both parties. (Evid. Code, § 351.1; *People v. Samuels* (2005) 36 Cal.4th 96, 128.) For a defendant to establish a federal due process right to overcome the categorical exclusion of polygraph evidence by Evidence

Code section 351.1, the defendant must first establish its scientific reliability and acceptance in the scientific community pursuant to *People v. Kelly* (1976) 17 Cal.3d 24 and *Frye v. United States* (D.C. Cir. 1923) 54 App.D.C. 46 [293 Fed. 1013]. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 847-852.) Appellate counsel's present showing to have defendant's polygraph taken does not include any showing of admissibility on *Kelly*/*Frye* grounds and would best be brought to the trial court.

We also deny appellate counsel's request to expand her appointment to include investigation of further evidentiary issues beyond those present in the instant record on appeal. We deny this request without prejudice to Stevenson pursuing any relevant evidentiary matters outside the scope of the current record and presenting them to the trial court on remand. We further deny appellate counsel's request to take judicial notice of cases in federal district court without prejudice to the defendant seeking discovery or judicial notice of any admissible matters by the trial court on remand.

## 2. Denial of Suppression Motion

Stevenson contends the trial court erred in denying his suppression motion because the force used was excessive as a matter of law. Stevenson argues the trial court impliedly found the force used by Crotty was excessive and was mistaken concerning the appropriate remedy. All claims of excessive force are measured under the objective reasonableness standard and the factors used to apply that standard set forth by the United States Supreme Court in *Graham v. Connor*, *supra*, 490 U.S. at pp. 394-399. The trial court presiding over a suppression motion has the power to determine the credibility of witnesses, resolve conflicts in testimony, and draw factual inferences. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) Appellate courts defer to the trial court's factual findings when they are supported by substantial evidence, whether express or implied. (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

The trial court clearly stated that from what it had available, it did not find Crotty's conduct amounted to an unreasonable amount of force. We disagree with

16.

Stevenson that Crotty's conduct was, as a matter of law, objectively unreasonable or that the trial court found the force used was excessive but applied the wrong remedy. We hold, however, that because the trial court did not permit Stevenson to present all admissible evidence during the suppression hearing, the court's evaluation of the available evidence was incomplete and could have impacted the trial court's ruling on whether Crotty applied excessive force. On remand, Stevenson may renew his suppression motion and is entitled to a new hearing on the motion.

**3.      Alleged Involuntary Plea**

Stevenson argues the trial court erred in finding his plea was entered voluntarily. Stevenson's appellate counsel has extensively briefed factual contentions largely outside the record on appeal to prove Stevenson was coerced into entering his plea in order to survive his incarceration. The factual matters Stevenson raises are not before us and we have rejected appellate counsel's request to expand her appointment to pursue a petition for writ of habeas corpus. We explain in our remand order that after discovery has been completed, Stevenson can renew his suppression motion and is entitled to a new hearing. After the trial court rules on the suppression motion, Stevenson can either keep the current plea bargain and the trial court will reinstate the judgment, or Stevenson can move the trial court to withdraw his plea and proceed to trial.

## DISPOSITION

The case is conditionally reversed and remanded for the following further proceedings. The trial court is directed to reappoint counsel for Stevenson to assist him with further proceedings. The trial court shall conduct a new *Pitchess* hearing to view Officer Crotty's personnel file since 2012, and to permit discovery of the discoverable portions of the current personnel file as noted herein. The trial court may seek guidance from the custodian of records in fashioning appropriate protective orders for this discovery. Stevenson shall be given the opportunity to discover any other relevant and

17.

admissible evidence and to bring motions for the trial court to take judicial notice of any relevant and admissible matters that this court declined to judicially notice on appeal.

After discovery has been completed, Stevenson may file a new motion to suppress. The trial court is directed to permit Stevenson to present any relevant and admissible evidence found in discovery. During the suppression hearing, Stevenson may cross-examine Officer Crotty concerning any improperly excluded evidence during the original suppression hearing as discussed in this opinion. This cross-examination may include any other questions to elicit relevant and admissible evidence.

After the trial court rules on Stevenson's new suppression motion, Stevenson shall be permitted to withdraw his plea and proceed to trial. If Stevenson elects not to withdraw his plea for a new trial, the trial court shall reinstate the judgment.

_____
PEÑA, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.


_____
DETJEN, J.

18.